CAROL MITCHELL ET AL. *v.* TREVOR REDVERS,
ADMINISTRATOR (ESTATE OF VALENTINE
L. SPECYALSKI), ET AL.
(AC 32793)

Robinson, Bear and Dupont, Js.

Argued April 14—officially released July 12, 2011

*Michael F. Dowley*, for the appellants (plaintiff Carol Mitchell et al.).

*William J. O'Sullivan*, for the appellee (defendant Frank Koba).

*Opinion*

DUPONT, J. The overriding issue before this court is whether the Marketable Title Act (act), General Statutes § 47-33b[1] et seq., extinguished the plaintiffs' equitable claim to an interest in a family farm. The farm was originally owned by Louis Specyalski (Louis) who died intestate in 1962.[2] Louis' nine children agreed in writing to convey their interests in the farm to one of their siblings, Valentine Specyalski (Valentine).[3] Valentine,

---

[1] General Statutes § 47-33b provides in relevant part: "(a) 'Marketable record title' means a title of record which operates to extinguish such interests and claims, existing prior to the effective date of the root of title, as are stated in section 47-33e . . . ."

[2] Louis owned a parcel of land referred to as Specyalski farm (farm), located at 323 Boston Road in Middletown. He died intestate on December 13, 1962. He had no surviving spouse and the distribution of his estate to his children was governed by General Statutes § 45-274 (now § 45a-438).

[3] Louis' children, all of whom are now deceased, were: Edmund Specyalski, Joseph Specyalski, Teofil Specyalski, Lottie Rebot, Adolph Specyalski, Leon Specyalski, Mary Koba, Frances Zimnewicz and Valentine. Valentine never married and had no children and was the last surviving child of Louis.

now deceased, devised his interest in the farm by his will to the defendant Frank Koba, his nephew. The plaintiffs[4] claim that an oral agreement or understanding existed among Louis' children that the written agreement really conveyed only a life use, not a fee interest, to Valentine, and that they, as the heirs of Louis' other children, are the equitable owners of the farm. The plaintiffs commenced this action asking the court to impose a constructive trust in their favor and seeking a declaratory judgment regarding the respective rights of the parties to the farm. The defendant Frank Koba filed a motion for summary judgment, which was granted by the trial court.[5] The trial court concluded that the act rendered the plaintiffs' claimed equitable interests void and that, because their action was wholly premised on the enforceability and validity of those alleged interests, the defendant was entitled to summary judgment as a matter of law. On appeal, the plaintiffs claim that the trial court erred in determining that

---

[4] The original plaintiffs to this action were Carol Mitchell, Steve Zimnewicz, Irene Arabek, Lorraine Cieneva, David Specyalski, Marty Specyalski, Doreen Zawacki and Annette McMahon, all of whom are first cousins and are Louis' grandchildren. Donald Koba, Jr., the nephew of the plaintiffs and Louis' great grandchild, was cited in as an additional plaintiff in March, 2010. The only plaintiff who is not a party to this appeal is Arabek.

[5] The present matter is the plaintiffs' appeal from the trial court's grant of Frank Koba's motion for summary judgment. Frank Koba will be referred to subsequently herein as the defendant.

The named defendant, Trevor Redvers, is the administrator of Valentine's estate. Other defendants who entered appearances are Gene Specyalski, Joanne Nolan and Paul Rebot, who are the heirs or representatives of the estates of some of Louis' children. Default judgments for failure to appear entered against other defendants denominated as "the representatives, creditors and heirs" of some of Louis' children.

Maryann Parker, who is the daughter of Lottie Rebot and is Louis' granddaughter, was also named as a defendant. She filed a cross complaint against the other defendants alleging the same facts as are alleged in the plaintiffs' complaint and seeking the same relief. The court also rendered summary judgment on her cross complaint. Parker did not appeal separately from the judgment. Reference herein to the plaintiffs includes Parker, the cross complaining plaintiff, unless otherwise noted.

the application of the act resolved the legal and factual issues in this case.[6] We conclude that the act applies and that it renders void any equitable claim to a constructive trust in the farm as alleged by the plaintiffs and negates the plaintiffs' claim for a declaratory judgment. We, therefore, affirm the judgment.

The following facts are undisputed. Louis died intestate on December 13, 1962. His heirs were his nine children, all of whom signed an agreement dated October 21, 1963 (agreement), giving their respective shares in the farm to Valentine. The agreement provided further that should Valentine wish to sell the property, the remaining children and their survivors retained a right of first refusal. The remaining children also retained the right to recoup any windfall obtained by Valentine should he sell the farm for an amount greater than the appraised value of the farm at the time of the conveyance, which was $10,000.[7] The agreement was accepted by the Middletown Probate Court and the farm was distributed to Valentine pursuant to the probate of

---

[6] Because we conclude that the act has extinguished any claim alleged by the plaintiffs, we do not reach the plaintiffs' claims concerning whether the trial court improperly failed to consider certain statements contained in the affidavits that they submitted to the court in opposition to the defendant's motion for summary judgment, which the court concluded constituted inadmissible hearsay.

[7] The agreement among Louis' children provides in relevant part that "it is mutually agreed as follows . . . [t]hat all of [Louis' children] will give to [Valentine] their respective shares in the [farm] . . . ." Should Valentine wish to sell the farm, "he shall first offer it to the survivors of [the other children] for the same price and terms as he shall offer it to others, and the survivors of [the other children] shall have the right, individually and jointly, to purchase said property for the same price and under the same terms and conditions as it shall have been offered to prospective purchasers. . . . In the event that the proceeds of the sale . . . shall amount to more than [$10,000] the difference between said proceeds . . . and [$10,000] shall be divided equally among the said survivors. . . ." Valentine was the last surviving child of Louis. He did not sell the entire acreage of the farm during his lifetime. See footnote 18 of this opinion. His interest in the farm passed to the defendant through his will.

Louis' estate in November, 1963. All of Louis' children, the parties to the agreement, are now deceased. Valentine executed a will in October, 2002, and died in August, 2008, leaving the farm to the defendant.

The plaintiffs allege in their complaint that the interest conveyed to Valentine pursuant to the agreement was only a life estate, not a fee interest, and that the conveyance of the farm to the defendant harmed them. In count one, they allege that they are the equitable owners of the farm and that the court should impose a constructive trust for their benefit. In count two, they seek a declaratory judgment concerning the respective rights of the parties to the farm. Appended to the complaint was a copy of the agreement.

The defendant filed an answer and alleged ten special defenses.[8] In the ninth special defense, the defendant alleges: "On or about November 19, 1963, a certificate from the Middletown Probate Court was filed in the Middletown land records confirming that all of the heirs of [Louis], deceased, had executed a division of the estate of [Louis], and that the property described in the plaintiffs' complaint was set over therein to [Valentine]. This certificate constitutes a root of title pursuant to [General Statutes] § 47-33b. There thus exists an unbroken chain of title in the land described in [the] plaintiffs' complaint for [forty] years or more, as required by [General Statutes] § 47-33c.[9] Any interest claimed by the

---

[8] The special defenses included waiver by delay, laches, failure to state a claim because an independent cause of action for constructive trust does not exist, statutes of limitations, failure to state a claim for declaratory relief, express contract and release, personal contract, unclean hands and res judicata.

The plaintiffs filed a reply denying the special defenses to the extent required and otherwise noting that the defenses contained legal conclusions and arguments to which the plaintiffs were not required to respond.

[9] General Statutes § 47-33c provides: "Any person having the legal capacity to own land in this state, who has an unbroken chain of title to any interest in land for forty years or more, shall be deemed to have a marketable record title to that interest, subject only to the matters stated in section 47-33d. A person has such an unbroken chain of title when the land records of the

plaintiffs is void pursuant to the authority of [General Statutes] § 47-33e."[10] On March 29, 2010, the defendant filed a motion for summary judgment on the plaintiffs' complaint on the ground that judgment should enter as a matter of law on his ninth special defense.[11] He argued that "[Valentine] held marketable record title in the farm for more than forty years, and his fee interest is therefore unencumbered by the plaintiffs' alleged reversionary interest, which was never documented in his chain of title."

In support of his motion, the defendant filed his own affidavit and the affidavit of his attorney, to which was attached a number of exhibits. The plaintiffs filed a memorandum of law in opposition to the defendant's motion for summary judgment and filed affidavits by four of the plaintiffs. They argued that issues of material fact exist concerning the agreement. They also argued that the act does not apply because they did not seek to "undo the deed" which transferred the property to

town in which the land is located disclose a conveyance or other title transaction, of record not less than forty years at the time the marketability is to be determined, which conveyance or other title transaction purports to create such interest in land, or which contains language sufficient to transfer the interest, either in (1) the person claiming that interest, or (2) some other person from whom, by one or more conveyances or other title transactions of record, the purported interest has become vested in the person claiming the interest; with nothing appearing of record, in either case, purporting to divest the claimant of the purported interest."

[10] General Statutes § 47-33e provides: "Subject to the matters stated in section 47-33d, such marketable record title shall be held by its owner and shall be taken by any person dealing with the land free and clear of all interests, claims or charges whatsoever, the existence of which depends upon any act, transaction, event or omission that occurred prior to the effective date of the root of title. All such interests, claims or charges, however denominated, whether legal or equitable, present or future, whether those interests, claims or charges are asserted by a person sui juris or under a disability, whether that person is within or without the state, whether that person is natural or corporate, or is private or governmental, are hereby declared to be null and void."

[11] The defendant also moved for summary judgment on his special defense of laches, which the trial court did not reach.

Valentine in 1963; rather, they sought to "uphold the part of the understanding and agreement . . . that [Valentine's] interest was only to be a life use interest, and that after [his] death, the property would be shared by all the family."[12] In its memorandum of decision, the court rejected the plaintiffs' arguments and rendered judgment for the defendant.

In order to determine whether the court properly granted the defendant's motion for summary judgment we must discuss the application of the act, whether a finding of a constructive trust could override the act in this case and the principles that govern an entitlement to summary judgment.

We set forth our standard of review. "Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent. . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the opposing party must present

---

[12] The defendant also moved for summary judgment on Parker's cross complaint. See footnote 5 of this opinion. Parker also opposed summary judgment by filing her own affidavit and making the "additional argument that the act is inapplicable in the present action because the probate certificate, which implements the [agreement], cannot serve as [Valentine's] 'root of title' under the act."

Parker did not appeal separately from the judgment and the plaintiffs, in their appeal, do not raise this issue. We conclude that the trial court properly concluded that the probate certificate, in conjunction with the documents attendant to the probate of Louis' estate, served as Valentine's " 'root of title.' " See footnote 14 of this opinion.

evidence that demonstrates the existence of some disputed factual issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § [17-45]. . . . Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Citation omitted; internal quotation marks omitted.) *Bonington* v. *Westport*, 297 Conn. 297, 305, 999 A.2d 700 (2010).

On appeal, the plaintiffs claim that summary judgment should not have been rendered because (1) a triable factual dispute exists concerning the agreement and (2) the application of the act does not resolve the legal and factual issues in this case. We reject both of these claims.

I

The plaintiffs first claim that a triable factual dispute exists concerning the agreement. The issue on appeal is whether the trial court properly concluded that no genuine issues of *material* fact exist. Although there may be facts in dispute as to whether a parol understanding existed among Louis' children when they executed the agreement, such facts are not material to whether Valentine held marketable record title in fee at the time of his death. We conclude that there are no material facts in dispute.

The following additional facts are relevant to the resolution of this claim. The defendant submitted evidence in support of his motion for summary judgment, including true and accurate copies of certain documents from the probate proceedings pertaining to Louis' estate. These included a document that the Probate

Court referred to as the mutual distribution, an allowance of account, ascertainment of heirs and order of distribution, and the probate certificate.

In the agreement, executed October 21, 1963, Louis' children agreed to give their respective shares in the farm to Valentine, reserving certain limited rights previously enumerated. The mutual distribution, also executed on October 21, 1963, and accepted as part of the Probate Court file, stated in relevant part that Valentine "shall take and have" the farm in addition to his equal share of the cash distributed from the estate. The remaining siblings took their cash share only.[13] The allowance of account, ascertainment of heirs and order of distribution similarly provides in relevant part: "Ordered . . . that a probate certificate, showing the title of the said [Valentine] to the real property of [Louis] be issued from this [c]ourt to the [l]and [r]ecords of the said [t]own of Middletown . . . ." Finally, the probate certificate, executed by the court on November 6, 1963, provides in relevant part: "That in said [d]ivision, styled also a [m]utual [d]istribution, the real estate of which said deceased died, seized and possessed, the same remaining intact upon the settlement, has been set forth to [Valentine], son of [Louis], such real estate being declared in such division . . . ." The probate certificate was recorded in the Middletown land records on November 19, 1963.[14]

---

[13] Louis' children each signed the mutual distribution before a commissioner of the Superior Court. On that page to which each signer affixed his or her signature is the following significant statement: "To Have and to Hold, to each of the parties hereto, and his or her heirs and assigns forever, the property, real and personal, hereinbefore assigned to said parties respectively, so that neither of us, nor any one claiming under either of us shall hereafter have any claim, right or title, in or to the premises or property or any part hereof hereinbefore assigned to the others, but each of us is from the premises so assigned to the others, forever barred and secluded."

[14] "It is fundamental jurisprudence that title to real estate vests immediately at death in a deceased's heirs, or in devisees upon the admission of the will to probate. . . . The recording of a probate certificate of devise or descent is necessary only to perfect marketable title. That certificate

We must ascertain in this case what is meant by "marketable record title" and what are the purposes of the act. " 'Marketable record title' means a title of record which operates to extinguish such interests and claims, existing prior to the effective date of the root of title . . . ." General Statutes § 47-33b (a). "[T]he ultimate purpose of [the act] is to simplify land title transactions through making it possible to determine marketability by limited title searches over some reasonable period of the immediate past and thus avoid the necessity of examining the record back into distant time for each new transaction. . . . [The act is] designed to decrease the costs of title assurance by limiting the period of time that must be covered by a title search. . . .

"Pursuant to the act, any person who has an unbroken record chain of title to an interest in land for a period of forty years, plus any additional period of time necessary to trace the title back to the latest connecting title instrument of earlier record[15] (which is the root of title[16]

---

furnishes evidence that the heir's or devisee's title is no longer in danger of being cut off by a probate sale to pay debts of the estate and also because it furnishes a record of who received the title." (Citations omitted; internal quotation marks omitted.) *Santa Fuel, Inc.* v. *Varga*, 77 Conn. App. 474, 487, 823 A.2d 1249, cert. denied, 265 Conn. 907, 831 A.2d 251 (2003). "Such a probate certificate is not a muniment of title, however, but merely a guide or pointer for clarification of the record." *Cardillo* v. *Cardillo*, 27 Conn. App. 208, 212, 605 A.2d 576 (1992). The act provides that "[t]he effective date of the root of title is the date on which it is recorded . . . ." General Statutes § 47-33b (e).

In the present case, the probate certificate stated that Louis' heirs "set forth" the farm to Valentine through the mutual distribution, which was "in writing, by them made, executed and acknowledged like deeds of land, which [d]ivision . . . becomes a valid distribution of [Louis'] estate." Although the probate certificate itself is not a muniment of title, it guides the searcher to the probate record through which Valentine received title. We consider the date that the probate certificate was recorded, which is November 19, 1963, to be the effective date of Valentine's root of title.

[15] General Statutes § 47-33c. See footnote 9 of this opinion.

[16] General Statutes § 47-33b (e) provides in relevant part: " 'Root of title' means that conveyance or other title transaction in the chain of title of a person, purporting to create or containing language sufficient to transfer the interest claimed by such person, upon which he relies as a basis for the

under the act) has a marketable record title subject only to those pre-root of title matters that are excepted under the statute or are caused to reappear in the latest forty year record chain of title. . . . The act declares null and void[17] any interest in real property not specifically described in the deed to the property which it purports to affect, unless within a forty year period, a notice specifically reciting the claimed interest is placed on the land records in the affected land's chain of title." (Citation omitted; internal quotation marks omitted.) *Johnson* v. *Sourignamath*, 90 Conn. App. 388, 394–95, 877 A.2d 891 (2005).

The plaintiffs do not dispute that the language in the relevant written documents, including the agreement and the mutual distribution, was sufficient to convey to Valentine a fee interest in the farm. Rather, the plaintiffs claim that a parol agreement existed among Louis' children that Valentine received only a life estate. The probate certificate, recorded in the land records on November 19, 1963, was necessary to perfect Valentine's marketable title; *Santa Fuel, Inc.* v. *Varga*, 77 Conn. App. 474, 487, 823 A.2d 1249, cert. denied, 265 Conn. 907, 831 A.2d 251 (2003); and we treat November 19, 1963, as the effective date of Valentine's root of title. See footnote 14 of this opinion. The defendant presented uncontroverted evidence that no instrument making any claim against the farm had been recorded in the Middletown land records subsequent to that date, nor had any instrument been recorded that purported to divest Valentine of his fee interest in the farm.[18] Thus,

marketability of his title, and which was the most recent to be recorded as of a date forty years prior to the time when marketability is being determined. . . ."

[17] General Statutes § 47-33e. See footnote 10 of this opinion.

[18] The land records reveal that when the plaintiffs commenced the present action, they recorded a lis pendens. During Valentine's lifetime, he conveyed a portion of the farm. Neither of these recordings is relevant to the issues in the present appeal.

the defendant presented uncontroverted evidence that Valentine had an unbroken record chain of title to his fee interest in the farm for a period of over forty years.

On the basis of our review of this evidence, we conclude, as did the trial court, that the defendant carried his burden of demonstrating that no material facts are in dispute concerning whether Valentine had marketable record title in fee when he devised the property to the defendant.

## II

The plaintiffs claim that the application of the act does not resolve the legal and factual issues in this case. They argue that because they have alleged the existence of a constructive trust, they should be permitted to present evidence to prove that there was an understanding among Louis' children that, despite the plain language of the documents, Valentine had only a life use of the farm and that, after Valentine's death, the farm was to be shared by the entire family. The plaintiffs maintain that the imposition of a constructive trust would not violate the act.[19] We disagree.

"A constructive trust arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy. . . . A constructive trust arises . . . when a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were

---

[19] The plaintiffs do not argue that their claim arises out of any interest or defect outlined in General Statutes § 47-33d.

permitted to retain it. . . . The issue raised by a claim for a constructive trust is, in essence, whether a party has committed actual or constructive fraud or whether he or she has been unjustly enriched." (Citation omitted; internal quotation marks omitted.) *Stornawaye Properties, Inc.* v. *O'Brien,* 94 Conn. App. 170, 175–76, 891 A.2d 123 (2006).

By the very nature of the claim, evidence to support a claim for a constructive trust of real property often will be at odds with what is recorded in the land records, and often will involve evidence of parol agreements. "Although it is well settled that, in general, real property absolutely conveyed cannot be shown to be subject to an express trust created by parol agreement . . . exceptions to this rule have been recognized where an injustice, sufficient to raise an equitable trust, would otherwise result. . . . In such cases, a trust does not arise so much by reason of the parol agreement of the parties but by operation of law." (Citations omitted.) *Cohen* v. *Cohen,* 182 Conn. 193, 202, 438 A.2d 55 (1980).

Our appellate courts have upheld the imposition of a constructive trust on a defendant's interest in real property when, although the written documentation indicated that a defendant held an interest in real property, the facts and circumstances adduced by the evidence presented demonstrated that the defendant was under an equitable duty to relinquish that interest. See id., 197–98 (constructive trust imposed on son's half interest in property because mother purchased property and paid all expenses and son previously had agreed to reconvey his interest to mother); *Schmaling* v. *Schmaling,* 48 Conn. App. 1, 4, 17–19, 707 A.2d 339 (constructive trust imposed on son's interest in parent's property when interest was conveyed only to secure construction financing), cert. denied, 244 Conn. 929, 711 A.2d 727 (1998); *Gulack* v. *Gulack,* 30 Conn. App. 305, 313–14, 620 A.2d 181 (1993) (constructive trust

imposed on property in favor of intended beneficiaries when property held by defendant widow, who took title on death of her husband, and husband had held title for beneficiaries' benefit). In none of those cases did the party claiming ownership raise the act as a special defense; in addition, in each case the interest in the property was challenged long before the expiration of the forty year period prescribed by the act.

The act declares null and void "all interests, claims or charges whatsoever, the existence of which depends upon any act, transaction, event or omission that occurred prior to the effective date of the root of title. . . ." General Statutes § 47-33e. This is true "however [such claims are] denominated, whether legal or equitable, present or future . . . ." General Statutes § 47-33e.

In the present case, we already have concluded that Valentine had an unbroken record chain of title to the farm and that the effective date of Valentine's root of title is November 19, 1963.[20] The plaintiffs commenced this suit in 2009, forty-six years after the effective date of Valentine's root of title. In their complaint, the plaintiffs refer to the alleged parol understanding among Louis' children as the "complete agreement" among them and allege that the "complete [October 21, 1963] agreement was not revoked, amended or modified by [Louis' children] on or before November 5, 1963, or any date thereafter." By their pleadings, it is clear that any parol understanding or agreement among Louis' children concerning whether Valentine received only a life use of the farm *arose prior to* the effective date of Valentine's

[20] The trial court treated November 6, 1963, as the effective date of the root of title. It is immaterial to the analysis under these facts whether November 6, 1963, or November 19, 1963, is the effective date of Valentine's root of title because it is clear from the pleadings that the alleged parol understanding or "complete agreement" arose *prior to* the probate proceedings that vested title to the property in Valentine.

root of title. Applying the plain language of the act to these facts, the plaintiffs' equitable claim is null and void. To hold otherwise would undermine the purposes of the act. Because the plaintiffs' action seeking a constructive trust and declaratory judgment was wholly premised on the enforceability and validity of this equitable claim, the trial court properly concluded that the defendant was entitled to summary judgment as a matter of law.

The judgment is affirmed.

In this opinion the other judges concurred.