******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DREW FRIEDMAN ET AL. *v.* MARIA MARGARITA
GOMEZ ET AL.
(AC 37930)

Lavine, Alvord and Beach, Js.

*Argued January 18—officially released April 11, 2017*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, Housing Session, Rodriguez, J.)

*Frederic S. Brody*, with whom was *Anne Louise
Blanchard*, for the appellants (defendants).

*Hale C. Sargent*, for the appellee (substitute plaintiff).

*Opinion*

ALVORD, J. The defendants, Maria Margarita Gomez, Guillermo Sanchez, Jr. (Sanchez Jr.), and Eric Sanchez, appeal from the judgment of the trial court, rendered after a trial to the court, in favor of the plaintiff Drew Friedman[1] on his summary process complaint and against the defendants on their special defenses and counterclaims. On appeal, the defendants claim that the court (1) improperly limited its jurisdiction when it concluded that it did not have the authority to determine title to the subject property, (2) improperly determined that Guillermo Sanchez, Sr. (Sanchez Sr.), was no longer a party to this action, and (3) abused its discretion in finding that the defendants failed to prove that they had an equitable interest in the subject property. The plaintiff claims that the defendants' appeal is moot and must be dismissed because they voluntarily vacated the premises after the appeal was filed. We conclude that the appeal is not moot, and we affirm the judgment of the trial court.

The court, as fact finder, reasonably could have found the following facts. The plaintiff[2] owned and managed commercial and residential real estate properties in Westport and Norwalk. Sanchez Sr. was employed by the plaintiff and was well liked by him. Gomez and Sanchez Sr. were married, and they lived with their two children, Sanchez Jr. and Eric Sanchez, in an apartment in Norwalk. Sanchez Sr. and Gomez wanted to purchase a home, and they began to save money for that purpose. The plaintiff, desirous of keeping Sanchez Sr. as an employee and having available financial resources, offered to assist by purchasing a two-family dwelling located on Godfrey Street in Norwalk. The purchase price was $250,000, and was paid in cash. The plaintiff took title to the property in his name by warranty deed recorded in the Norwalk land records on March 13, 2002.

Sanchez Sr. contributed $7700 toward the $25,000 down payment and an additional $4009.55 in closing costs. The plaintiff's total contribution to the purchase of the two-family dwelling totaled $243,785.60. Sanchez Sr. and the plaintiff had an understanding that $240,000 of the amount paid constituted a loan from the plaintiff to Sanchez Sr., which was to be repaid in 180 payments at 7.5 percent interest. The first payment of principal and interest was due May 1, 2002, and the final payment was due April 1, 2017. The plaintiff provided Sanchez Sr. with an amortization schedule with respect to the loan payments. Sanchez Sr. and the plaintiff further agreed that if Sanchez Sr. made all of the required payments, the plaintiff would convey title to the subject property to him upon receipt of the final payment.

Sanchez Sr. and the defendants occupied the second floor of the two-family dwelling beginning in March or

April of 2002. Sanchez Sr., acting as the plaintiff's agent, rented the first floor to various tenants, collected the rent, and maintained the property. He kept the rent and paid the bills related to the subject property, including the real estate taxes. Sanchez Sr. began to make the required payments to the plaintiff, as set forth in the amortization schedule, but subsequently fell behind and eventually ceased making any payments. At the time of trial, the plaintiff's records indicated that the amount due from Sanchez Sr. was $165,077.67 in principal and $44,512.24 in interest. Sanchez Sr. vacated the property in 2010, but the defendants continued to reside on the second floor. The defendants made no payments pursuant to the amortization schedule, nor did they pay the plaintiff for use and occupancy of the property.

The plaintiff served the defendants with a notice to quit on June 6, 2014. The stated reason for the eviction was as follows: "No right or privilege of possession by one who formerly had such a right." The defendants continued to reside at the subject property, and the plaintiff commenced this summary process action on August 22, 2014. A trial was held in the Housing Session at Norwalk on April 28, 2015. At that time, the plaintiff, Gomez and Sanchez Jr. testified, and the plaintiff submitted five exhibits. Although the court ruled at the beginning of the trial that Sanchez Sr. was no longer a party to the action, the transcript of the trial reflects that he was in the courtroom. Further, the plaintiff's counsel stated that Sanchez Sr. was available to testify if the defendants chose to call him to the witness stand. Sanchez Sr. was not called to testify as a witness by either the plaintiff or the defendants.

The court issued its notice of judgment on April 30, 2015. The decision provides as follows: "Judgment for Plaintiff for Immediate Possession—After Trial. The plaintiff has proven all of the allegations in [his] complaint dated October 8, 2014. The defendants have failed to prove [their] counterclaims of constructive trust in [the] first count, resulting trust in the second count, promissory estoppel in the third count, equitable estoppel in the fourth count and unjust enrichment in the fifth count. Also there is insufficient evidence to support the special defenses of estoppel, unclean hands, and ownership by Maria Gomez, as defined in [General Statutes §] 47a-1 (e)." On May 26, 2015, the court issued the following addendum to its judgment: "The basis for the court finding after trial, the defendant failed to prove [the] counterclaims and special defenses, is the testimony of Maria Gomez is discredited with regard to her claims." This appeal followed.[3]

I

Before reaching the merits of the defendants' claims on appeal, we first must address the plaintiff's claim that the entire appeal is moot because the defendants voluntarily vacated the subject premises on May 8, 2015.

"Mootness is a question of justiciability that must be determined as a threshold matter because it implicates [a] court's subject matter jurisdiction . . . . Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable. Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant." (Internal quotation marks omitted.) *Reveron* v. *Board of Firearms Permit Examiners*, 123 Conn. App. 475, 477–78, 1 A.3d 1272 (2010).

In their initial preliminary statement of issues filed pursuant to Practice Book § 63-4 (a) (1), the defendants claimed, inter alia, that the "trial court abused [its] discretion in finding that the plaintiff proved all of the allegations in the complaint." After the defendants vacated the property, they amended their statement of issues and omitted any claims arising from the court's judgment for immediate possession on the plaintiff's summary process complaint. The issues remaining on appeal all relate to the defendants' counterclaims.[4] Nevertheless, the plaintiff argues that "[o]nce the issue of possession becomes moot, the rationale for permitting a counterclaim in a summary process action is lost." We disagree.

This court has "consistently held that an appeal from a summary process judgment becomes moot where, at the time of the appeal, the defendant is no longer in possession of the premises." (Internal quotation marks omitted.) *Cheshire* v. *Lewis*, 75 Conn. App. 892, 893, 817 A.2d 1277, cert. denied, 264 Conn. 905, 826 A.2d 177 (2003). Here, the defendants concede that any claims concerning the summary process judgment are now moot and that, as a result, they are pursuing the appeal only insofar as it challenges the judgment rendered against them on the counterclaims. The counterclaims in this action concern ownership, rather than possession, of the property. If this court should decide in favor of the defendants with respect to their claims on appeal, the defendants may be afforded practical relief with respect to their entitlement to ownership rights in the property or monetary compensation. Accordingly, we conclude that the claims in the present appeal are not moot.

## II

The defendants' first claim is that the court improperly limited its jurisdiction when it concluded that it did not have the authority to determine title to the subject property. Specifically, the defendants argue that "[t]he trial court stated that while it was a court of equity, it did not have the authority to determine title."[5]

The defendants claim that the "court's belief that it could not make equitable determinations prejudiced [the] defendants." No less than four times in the defendants' appellate brief, in addressing this claim, they argue that the court either predetermined or was predisposed to the conclusion that it lacked jurisdiction to entertain the defendants' equitable defenses and counterclaims.

The defendants have focused on an isolated statement of the court in support of this claim. Immediately following the challenged remark, the court stated: "Title . . . to the property can be considered in terms of the claims of equity, but I don't hear you coming up with anything other than testimonial evidence that there's a belief that [Gomez has an] ownership [interest] in this property . . . ." Further, when the defendants' counsel offered to provide citations to cases that hold that counterclaims relating to the ownership of the property can be raised in the Housing Session,[6] the court responded: "I don't need citations. . . . I need competent evidence to support that claim, and I don't—I don't hear you offering anything yet . . . ." Shortly thereafter, which was immediately before the defendants began their case-in- chief, the court commented to the defendants' counsel: "I'm not going to foreclose you from close— from presenting what you think is relevant and admissible. It may not be admissible, but you go ahead." At no point did the court indicate that it lacked jurisdiction to hear and rule on the defendants' equitable defenses and counterclaims.

Moreover, in the notice of judgment, the court expressly ruled on each of the defendants' counterclaims. The court "discredited" the testimony of Gomez and concluded that "[t]he defendants have failed to prove [their] counterclaims . . . ." By rendering judgment against the defendants on their counterclaims, the court clearly exercised its authority in determining the defendants' equitable claims. Accordingly, this claim is without merit.

### III

The defendants next claim that the court improperly determined that Sanchez Sr. was no longer a party to this action. They argue that because Sanchez Sr. was a plaintiff in the initial complaint, he could not be "unilaterally removed" as a party. According to the defendants, Sanchez Sr. "was misjoined as a party to this action," and "[t]he exclusive remedy for misjoinder of parties is by motion to strike." Because the plaintiff did not file a motion to strike Sanchez Sr. as a misjoined party, the defendants claim that the trial court improperly determined that the operative revised complaint pertained to the named plaintiff only.

The cases cited by the defendants in support of this claim are not applicable to the present situation.

Motions to strike misjoined parties are filed by *opposing* parties. In this action, Sanchez Sr., as a plaintiff, simply could withdraw his complaint against the defendants. The trial court ruled that, by filing a revised complaint that eliminated all allegations by Sanchez Sr. against the defendants, the matter had to proceed with only the named plaintiff as the party plaintiff.

General Statutes § 52-80 provides in relevant part: "The plaintiff may withdraw any action . . . before the commencement of a hearing on the merits thereof. After the commencement of a hearing on an issue of fact in any such action, the plaintiff may withdraw such action . . . only by leave of court for cause shown." "If the requisite hearing has not commenced, then the plaintiff's right to withdraw is 'absolute and unconditional.'" *Melendez* v. *Commissioner of Correction*, 141 Conn. App. 836, 843, 62 A.3d 629, cert. denied, 310 Conn. 921, 77 A.3d 143 (2013); see also *Daigneault* v. *Consolidated Controls Corp./Eaton Corp.*, 89 Conn. App. 712, 714, 875 A.2d 46, cert. denied, 276 Conn. 913, 888 A.2d 83 (2005), cert. denied, 546 U.S. 1217, 126 S. Ct. 1434, 164 L. Ed. 2d 137 (2006).

Furthermore, Sanchez Sr. was present in the courtroom at the time of trial and could have been called to testify as a witness by the plaintiff or the defendants. The defendants did not avail themselves of that opportunity and cannot now claim to be prejudiced when it is not known what the testimony of Sanchez Sr. would have been.

IV

The defendants' final claim is that the court abused its discretion in finding that they failed to prove that they had an equitable interest in the subject property. Specifically, the defendants argue that "the trial court's discrediting of [Gomez'] testimony is clearly erroneous and without support in the record." Further, they claim that "the substance of [the plaintiff's] testimony clearly shows that [Sanchez Sr.] acted in the role of owner." The defendants' argument is not persuasive.

We first set forth the principles governing the imposition of a constructive trust or a resulting trust upon property. "A constructive trust arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy. . . . A constructive trust arises . . . when a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it. . . . The issue raised by a claim

for a constructive trust is, in essence, whether a party has committed actual or constructive fraud or whether he or she has been unjustly enriched." (Internal quotation marks omitted.) *Mitchell* v. *Redvers*, 130 Conn. App. 100, 112–13, 22 A.3d 659 (2011).

"A resulting trust arises by operation of law at the time of a conveyance when the purchase money for property is paid by one party and the legal title is taken in the name of another. . . . The presumption of the existence of such a trust, however, is one of fact rather than law and may be rebutted by proof of contrary intent. . . . The existence of a resulting trust is an issue of fact. . . . If it can be proved that the intention of the parties was otherwise, there is no resulting trust. . . . In deciding . . . what the intent of the parties was at the time of the conveyance, the court [must] rely upon its impression of the credibility of the witnesses. Intent is a question of fact, the determination of which is not reviewable unless the conclusion drawn by the trier is one which could not reasonably be drawn." (Internal quotation marks omitted.) *Levinson* v. *Lawrence*, 162 Conn. App. 548, 554, 133 A.3d 468 (2016).

The record in this case amply supports the trial court's determination that the defendants failed to prove their entitlement to a constructive trust or a resulting trust on the subject property. First, it is important to note that the court "discredited" the testimony of Gomez. Because intent is a significant issue in actions claiming such equitable remedies, it was within the province of the trial court to credit or to discredit testimony as it deemed fit. The court was not required to believe Gomez as to her version of the facts relating to intent at the time the plaintiff took title to the property. See *Cadle Co.* v. *D'Addario*, 268 Conn. 441, 462, 844 A.2d 836 (2004); *Walter* v. *Home National Bank & Trust Co.*, 148 Conn. 635, 639, 173 A.2d 503 (1961).

The evidence presented, which reasonably could have been credited by the trial court, was that the plaintiff contributed $243,785.60 and Sanchez Sr. contributed $11,709.55 to purchase the property. Sanchez Sr. and the plaintiff considered $240,000 of the plaintiff's contribution to be a loan to Sanchez Sr., to be paid back in 180 payments at 7.5 percent interest. If Sanchez Sr. made all of the required payments pursuant to the plaintiff's amortization schedule, the plaintiff would then convey title to Sanchez Sr. Sanchez Sr. made some payments but then defaulted. At the time of the trial, Sanchez Sr. owed $165,077.67 in principal and $44,512.24 in interest. All of the payments made toward the repayment of the loan were paid by Sanchez Sr.; the defendants made no payments.[7] No use and occupancy payments were ever made by Sanchez Sr. or the defendants during the thirteen year period of time that they resided at the property. No documentation was submit-

ted to show that Sanchez Sr. or the defendants acquired an ownership interest in the property at the time of the March 13, 2002 closing.

Under these circumstances, there is no evidence to suggest that the plaintiff committed actual or constructive fraud or that he was unjustly enriched by taking and retaining title to the property. Further, the intent was that the plaintiff would convey title to Sanchez Sr. only after he fully repaid the loan, which he never did. Accordingly, the trial court did not abuse its discretion in determining that the defendants failed to prove that they had an equitable interest in the property.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] A notice to quit was served on June 6, 2014, and a summary process complaint was filed on August 26, 2014, by Friedman and Guillermo Sanchez, Sr., against the three defendants. The complaint was revised on October 8, 2014. The revised complaint deleted all references to Guillermo Sanchez, Sr., and contained allegations by Friedman only as the named plaintiff. The trial court ruled that Guillermo Sanchez, Sr., was no longer a party to the summary process action.

[2] The plaintiff died on February 27, 2016, after this appeal was filed by the defendants. This court granted the motion of the temporary administrator of his estate, Thomas C. C. Sargent, to be substituted as the plaintiff. Nevertheless, for the sake of convenience, we refer to Friedman as the plaintiff in this opinion.

[3] On June 8, 2015, the defendants filed a motion for articulation, requesting the trial court to set forth "the specific facts and law upon which [it] relied . . . in finding the defendants failed to prove their counterclaims." The trial court responded to the motion as follows: "See notices sent on 4/30/15 [and] 5/26/15 enclosed." The defendants timely filed a motion for review with this court requesting further explanation from the trial court. On September 24, 2015, notice was sent of an order issued by this court that granted the motion for review but denied the relief requested.

[4] In their counterclaims, the defendants alleged promissory estoppel, equitable estoppel, and unjust enrichment. In the relief requested, the court was asked to order the conveyance of a one-half interest in the property to Gomez and to impose a constructive trust or a resulting trust on the property.

[5] The defendants reference the following exchange between the court and the defendants' counsel:

"The Court: And remember that this is a housing court. This is a Superior Court Housing Session. I know it's a court of equity.

"[The Defendants' Counsel]: Yes, Your Honor.

"The Court: But it's not a court where title is quieted or anything like that."

[6] It is well settled that "[e]quitable defenses and counterclaims implicating the right to possession are available in a summary process proceeding." (Internal quotation marks omitted.) *Cumberland Farms, Inc.* v. *Dairy Mart, Inc.*, 225 Conn. 771, 777, 627 A.2d 386 (1993). "[T]here is no longer sufficient justification for the old prohibition against the application of equitable principles barring forfeitures to summary process . . . the prohibition, arising from an obsolete system, is itself obsolete . . . and . . . equitable defenses and counterclaims implicating the right to possession are available in a summary process proceeding." *Fellows* v. *Martin*, 217 Conn. 57, 62, 584 A.2d 458 (1991). "[T]he scope of allowable issues in a summary process action has been broadened to include complex equitable issues to be filed as special defenses. . . . Such issues had previously been unavailable in summary process actions. . . . Since the defendants' claims could have been asserted as special defenses, judicial economy dictates that they may also be asserted as the basis of a counterclaim." (Citations omitted.) *Filosi* v. *Hawkins*, 1 Conn. App. 634, 635 n.1, 474 A.2d 1261 (1984).

[7] At trial, Gomez confirmed that all of the payments made to the plaintiff were made by Sanchez Sr. She also testified that she never made any use and occupancy payments to the plaintiff.

The defendants also claim that they made improvements to the property, but no evidence was submitted as to the value of those improvements, nor

was evidence submitted to substantiate that claim.

--------------------