******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

## SOVEREIGN BANK *v.* JAMES LICATA ET AL.
## (AC 40186)

Lavine, Prescott and Kahn, Js.*

*Syllabus*

The plaintiff bank sought to foreclose a mortgage on certain real property owned by the defendant L, who filed counterclaims alleging breach of contract, negligent misrepresentation, and a violation of the Connecticut Unfair Trade Practices Act (CUTPA) (§ 42-110a et seq.). Thereafter, S Co. was substituted as the plaintiff. The counterclaims were tried to a jury, which returned a verdict in part for L, and the foreclosure complaint was tried to the court, which rendered judgment in part for L in accordance with the jury's verdict, and a judgment of strict foreclosure and set the law days. Following the trial court's decision awarding attorney's fees and, inter alia, granting in part S Co.'s motion to set aside the verdict and for judgment notwithstanding the verdict, S Co. appealed to this court, challenging the judgment rendered against it on the counterclaims for negligent misrepresentation and for CUTPA violations. L also filed a cross appeal challenging the court's decision to set aside the verdict as to the breach of contract counterclaim, which was dismissed. This court reversed in part the judgment of the trial court as to the counterclaims. Several years later, L filed a motion to determine the status of the strict foreclosure judgment, in which she claimed that her equity of redemption was never extinguished because the passage of the law days had been stayed by the prior appeal. S Co. filed a motion to correct the record to reflect that a judgment of strict foreclosure had been rendered, that the law days had commenced thereafter and that the commencement of the law days had never been stayed or modified. The trial court denied the motions, and L appealed to this court. Thereafter, S Co. filed a motion to dismiss the appeal for lack of subject matter jurisdiction, claiming that L's interest in the property had been extinguished after the law days passed. *Held* that the appeal was dismissed as moot, as there was no practical relief that could be afforded to L due to the fact that title to the property at issue had long since passed unconditionally to S Co.: because the record demonstrated that the trial court rendered judgment of strict foreclosure with respect to the subject property and that no appeal was ever filed from the judgment rendered on the foreclosure complaint, any initial appellate stay of execution that arose when the judgment was rendered expired after the appeal period for that judgment had run, which was long before the law days set by the court had passed, and, therefore, because there was no appellate stay in effect with respect to the foreclosure judgment when the law days began to run, absolute title to the property transferred to the plaintiff as a matter of law after all the law days expired; moreover, because the rules of practice (§§ 61-2 through 61-4) establish that a final judgment disposing of a counterclaim is separate and distinct from a judgment on the associated complaint, the foreclosure judgment gave rise to a distinct appeal period and appellate stay that automatically terminated upon the expiration of the period to appeal from that judgment, and was not affected by the stay that resulted due to the appeal from judgment on the counterclaim.

Considered September 7—officially released November 14, 2017

*Procedural History*

Action to foreclose a mortgage on certain real property owned by the named defendant et al., and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the court, *Tobin, J.*, granted in part the plaintiff's motion for summary judgment as to liability with respect to the defendant Cynthia Licata; thereafter, the court, *Tyma, J.*, granted the motion filed by Seven Oaks Partners, LP, to be substi-

tuted as the plaintiff; subsequently, the defendant Cynthia Licata field a counterclaim as against the substitute plaintiff; thereafter, the counterclaim was tried to the jury and the foreclosure complaint was tried to the court, *Nadeau, J.*; verdict for the defendant Cynthia Licata on the counterclaim; subsequently, the court, *Nadeau, J.*, denied the substitute plaintiff's motion for remittitur, granted in part the substitute plaintiff's motions for judgment notwithstanding the verdict and to set aside the verdict, and rendered judgment of strict foreclosure and in part for the defendant Cynthia Licata on the counterclaim, from which the substitute plaintiff appealed and the defendant Cynthia Licata cross appealed to this court, which dismissed the cross appeal, reversed in part the judgment of the trial court as to the counterclaim and remanded the case to the trial court with direction to vacate in part the damages and attorney's fees awards; thereafter, the court, *Mintz, J.*, denied the motion to determine the status of the foreclosure judgment filed by the defendant Cynthia Licata and denied the substitute plaintiff's motion to correct the record, and the defendant Cynthia Licata appealed to this court; subsequently, the substitute plaintiff filed a motion to dismiss the appeal. *Appeal dismissed.*

*Howard R. Wolfe* in support of the motion.

*John F. Carberry* in opposition to the motion.

*Opinion*

PRESCOTT, J. In this protracted foreclosure matter, the defendant Cynthia Licata[1] appeals following the trial court's denial of her motion asking the court to clarify the "status" of a judgment of strict foreclosure that was rendered orally in open court, more than ten years earlier, and from the trial court's order making copies of the transcripts of the relevant underlying proceedings a part of the court file. The plaintiff Seven Oaks Partners, LP,[2] filed a motion to dismiss the appeal on the ground that this court lacks subject matter jurisdiction because the appeal is moot and the decisions from which the defendant appealed do not constitute appealable final judgments. The defendant opposes the motion to dismiss. Because we agree that there is no practical relief that can be afforded to the defendant in this matter due to the fact that title to the property at issue has long since passed unconditionally to the plaintiff, we grant the plaintiff's motion and dismiss the appeal as moot.[3]

The record reveals the following relevant facts and procedural history. In 2001, James Licata entered into a loan agreement with Sovereign Bank and executed a note in the amount of $2.5 million. As security for that loan, he and the defendant executed a mortgage on two parcels of property in Greenwich. The first parcel was owned by the defendant, and the second, a vacant lot located across the street from the first parcel, was owned by James Licata.[4] As additional security, a guaranty for the loan was executed by First Connecticut Consulting Group, Inc.[5]

James Licata failed to make timely monthly payments on the loan and eventually was held in default. Sovereign Bank chose to accelerate the loan, demanded payment in full, and, in February, 2002, commenced this action seeking a judgment of foreclosure, a deficiency judgment against James Licata, and enforcement of the loan guaranty.

The defendant filed an answer and special defenses in which she alleged that she had executed the mortgage under duress and that Sovereign Bank had breached an implied covenant of good faith and fair dealing. James Licata never filed a responsive pleading and was later defaulted for failure to disclose a defense.[6] In September, 2003, the court rendered summary judgment as to liability only on the foreclosure complaint with respect to the defendant.

In September, 2004, the plaintiff, which previously had purchased and been assigned the subject note and mortgage, was substituted into the foreclosure action in place of Sovereign Bank. The defendant, in February, 2005, filed a pleading that asserted a new special defense and three counterclaims, each premised upon the plaintiff allegedly having entered into a forbearance

agreement with her. The counterclaims sounded in breach of contract, negligent misrepresentation, and a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. The plaintiff objected to the filing of the special defense and counterclaims, arguing that the defendant needed permission from the court to amend her previous answer. The plaintiff also filed a motion asking the court to render a judgment of strict foreclosure.

In March, 2005, the court overruled the plaintiff's objection to the special defense and counterclaims. The plaintiff also unsuccessfully moved to sever the counterclaims from the foreclosure action. The defendant's counterclaims were tried to a jury. The plaintiff's claim on the foreclosure complaint was tried to the court, *Nadeau, J.* On September 27, 2006, the jury returned a verdict in favor of the defendant on all three counterclaims and awarded combined damages of $500,000 on the negligent misrepresentation and breach of contract counts.

On October 5, 2006, the court held a hearing at which it heard arguments as to whether it could proceed to rule on the foreclosure complaint in light of the jury's verdict on the counterclaims and its responses to related interrogatories. After hearing arguments from the parties, the court concluded that it would proceed to judgment on the foreclosure complaint. After reviewing the evidence presented, including the appraisals submitted at trial, the court made a number of findings, including that the amount of the debt owed was $2,947,595.84 and that the fair market value of the property was $2.5 million. In light of there being insufficient equity to cover the debt, the court determined, and the parties agreed, that a judgment of strict foreclosure, rather than a foreclosure sale, was the appropriate remedy. The court ordered that the law days would commence on February 6, 2007. The court indicated that it would hold an additional hearing regarding the issue of attorney's fees, both as a component of the foreclosure judgment and as part of the defendant's damages on the CUTPA counterclaim.[7] The court then proceeded to hear argument on whether to award punitive damages with respect to the CUTPA violation. Ultimately, the court concluded that the defendant was entitled to an additional $300,000 in punitive damages.

On October 10, 2006, the plaintiff filed postjudgment motions to reconsider the punitive damages award, to set aside the jury's verdict on the counterclaims, for judgment notwithstanding the jury's verdict, and for remittitur. The plaintiff also submitted various memoranda of law in support of its motions.

The court heard argument on the postjudgment motions at a hearing on November 14, 2006, following which it heard arguments regarding the outstanding issue of attorney's fees. Judge Nadeau denied the

motions for reconsideration and for remittitur, but granted in part the plaintiff's motion to set aside the verdict and for judgment notwithstanding the verdict with respect to the breach of contract count. The court otherwise denied the postjudgment motions. With respect to attorney's fees, the court awarded attorney's fees to the plaintiff on the foreclosure complaint and to the defendant on her CUTPA counterclaim. The court ended the hearing by confirming with the parties that it had made all findings necessary for the entry of a judgment of strict foreclosure, referring to its findings and the law days set forth at the October 5, 2006 hearing.[8] The court took no additional action to memorialize the judgment, nor was such action expressly requested by the parties under our rules of practice.[9]

The plaintiff filed a timely appeal on November 28, 2006, challenging the judgment rendered against it on the CUTPA and negligent misrepresentation counterclaims. The defendant filed a cross appeal, which was later dismissed, that purported to challenge only the court's decision to set aside the jury's verdict with respect to the breach of contract counterclaim. *Sovereign Bank* v. *Licata*, 116 Conn. App. 483, 485–86, 977 A.2d 228 (2009), appeal dismissed, 303 Conn. 721, 36 A.3d 662 (2012) (certification improvidently granted). Neither the appeal nor the cross appeal raised any challenge to the judgment of strict foreclosure.

In February, 2008, during the pendency of the appeal, the plaintiff filed a motion with the trial court to terminate the automatic appellate stay. Apparently, the plaintiff was concerned that the filing of the appeal or cross appeal from the judgment on the counterclaims had effectuated a stay of the proceedings to enforce or carry out the foreclosure judgment, thus preventing the running of the law days. On April 15, 2008, following a hearing, Judge Nadeau granted the motion to terminate an appellate stay that, for reasons we explain later, had never actually arisen by virtue of the filing of the appeal or cross appeal.[10]

The plaintiff erroneously stated in subsequent motions filed with the trial court that the defendant's cross appeal had been taken from the foreclosure judgment. After the cross appeal was dismissed, the plaintiff filed motions with the trial court that asked the court to set new law days, further suggesting that the February, 2006 law days had not passed because of the pendency of the cross appeal. The plaintiff's assertions regarding the nature of the cross appeal, however, simply were inaccurate and not supported by the record. The appeal and cross appeal forms expressly indicated that the parties only intended to challenge aspects of the judgment on the counterclaims, pursuant to which the plaintiff was awarded compensatory damages for causes of action distinct from the foreclosure remedy sought in the complaint. Separate judgments were ren-

dered on the complaint, which was tried to the court, and the counterclaims, which were tried to the jury. Furthermore, the motions to set new law days were marked over and never acted upon by the trial court. Certainly, any assumptions made by the plaintiff regarding the operation of our rules of practice are not binding on this court and have no bearing on our present analysis.

The defendant filed a motion asking this court to review the trial court's order terminating the automatic appellate stay. This court compounded the parties' apparent misunderstanding regarding the nature of the purported appellate stay by granting the motion for review and also granting relief, remanding the matter to the trial court with direction to reconsider its termination of stay in light of our decision in *Barclays Bank of New York* v. *Ivler*, 20 Conn. App. 163, 565 A.2d 252, cert. denied, 213 Conn. 809, 568 A.2d 792 (1989).[11] In response to our ruling, the trial court issued an order rescinding its termination of stay. No additional motion for review was filed from that order.

On August 18, 2009, this court issued an opinion that resolved the appeal on the counterclaims. We reversed the judgment rendered on the jury's verdict as to the CUTPA counterclaim and vacated the associated punitive damages and attorney's fee awards. *Sovereign Bank* v. *Licata*, supra, 116 Conn. App. 494–95. We affirmed, however, the judgment against the plaintiff on the negligent misrepresentation counterclaim. Id., 505. We rejected the plaintiff's claims that the court improperly denied its motion for remittitur and failed to sustain its objection to the defendant's claim for a jury trial on her counterclaims.[12] Id., 507. The Supreme Court initially granted the plaintiff's petition for certification to appeal from our decision on October 14, 2009; *Sovereign Bank* v. *Licata*, 293 Conn. 935, 981 A.2d 1080 (2009); but that appeal was dismissed in February, 2012, on the ground that certification had been improvidently granted. *Sovereign Bank* v. *Licata*, 303 Conn. 721, 723, 36 A.3d 662 (2012).[13]

In July, 2012, the defendant obtained a financial institution execution for her $500,000 judgment against the plaintiff. In October, 2012, the plaintiff, who previously had filed for bankruptcy and was represented by new counsel, filed a motion to set law days, asserting that the court had "withheld setting law days in furtherance of the strict foreclosure judgment because [an] appeal was pending" and that the plaintiff sought to have the court set new law days "to complete the foreclosure process." The plaintiff also filed a new foreclosure worksheet accompanied by an affidavit of debt, an affidavit of attorney's fees and an affidavit of appraisal. No action was taken by the court.

A year later, on October 9, 2013, the plaintiff again filed a motion to set the law days. At the same time,

the plaintiff filed an application with the court for an execution of ejectment. The application form indicated that a foreclosure judgment had been rendered and that title to the property had transferred to the plaintiff six years earlier, i.e., on February 12, 2007. On November 19, 2013, the trial court clerk issued the execution for ejectment. The execution authorized a proper officer to eject the defendant from the property and to remove her personal effects. There is no indication, however, that the plaintiff ever had an officer execute the ejectment. On December 2, 2013, the court clerk also issued a certificate of judgment of strict foreclosure. See General Statutes § 49-16 (requiring that foreclosure certificate be recorded in land records once title becomes absolute in mortgagee). The record reveals no objection by the defendant either to the application for the execution of ejectment or to the foreclosure certificate.

No further action, in fact, was taken in this matter for another three years until July 21, 2016, when counsel for the defendant filed a caseflow request seeking a status conference. According to that request, the status of the foreclosure action needed to be addressed because the plaintiff was attempting to sell the property. The defendant asserted that no judgment of foreclosure had ever been rendered in favor of the plaintiff.

On January 6, 2017, the defendant filed a motion titled "Motion to Determine Status of Purported Judgment of Strict Foreclosure." In her motion, the defendant acknowledged that the plaintiff had "filed a certificate of foreclosure, and has treated the property as its own, including pocketing insurance proceeds paid due to water damage to the property." The defendant nevertheless maintained that her equity of redemption was never extinguished because "the setting and passage of law days . . . never happened in this case, meaning [she] remains the owner of the property." In support of her arguments, the defendant largely relied on the plaintiff's attempt to terminate the appellate stay in the prior appeal and its unresolved requests for the court to reset the law days. The defendant also made reference to the judgment file submitted by the trial court. Although she conceded that the judgment file indicated that the court had rendered a judgment of strict foreclosure in this matter, she nevertheless believed that it was legally significant that the judgment file failed to mention law days.

On January 13, 2017, the plaintiff filed a "Motion to Correct Record." In that motion, the plaintiff argued that Judge Nadeau had rendered a final judgment of strict foreclosure from the bench at the hearings on October 5 and November 14, 2006, including setting law days commencing on February 6, 2007. The plaintiff argued that the February 6, 2007 law day set forth by the court as part of the judgment was "never stayed,

modified, set aside or otherwise changed." The plaintiff asked the court to correct the judgment file to the extent that it contained any errors or omissions and submitted a proposed corrected judgment file. The plaintiff also filed an objection to the defendant's motion to determine status.

The court, *Mintz*, *J.*, held a hearing on February 14, 2017. The court informed the parties that "[t]he record is what the record is" and that the court would not issue what it deemed an "advisory opinion" setting forth the status of the judgment or resolving ownership of the property, which the court explained could be determined from reviewing the record. With respect to the motion to correct, the court refused to make the proposed corrections to the judgment file.

To ensure a complete record in this matter, however, the court agreed to make copies of the transcripts from the October 5 and November 14, 2006 hearings before Judge Nadeau a part of the court file. All parties stipulated at the hearing regarding the authenticity of the transcripts to be included in the file. The parties also helped to identify a number of other irregularities in the trial court's file, including several missing or miscoded documents, which the court granted permission to correct in accordance with an agreement reached by the parties during a recess. The defendant filed this appeal on March 6, 2017, from the court's order making the transcripts of the October 5 and November 14, 2006 foreclosure proceedings a part of the court record, and from its order denying her motion to determine the status of the foreclosure judgment.

The plaintiff filed the present motion to dismiss on March 27, 2017, arguing, inter alia, that the appeal should be dismissed for lack of subject matter jurisdiction because the defendant's interest in the property had been extinguished by the passing of law days and, therefore, the appeal was moot.[14] The defendant filed a timely opposition to the motion to dismiss. With respect to mootness, the defendant stated as follows: "[The plaintiff] is correct that if a judgment of strict foreclosure entered in 2006 and if the law days entered therein passed, this appeal is moot. That position, however, begs the question to which [the defendant] seeks guidance: did a judgment of strict foreclosure ever enter in this case? Until that question is answered, the issue of mootness is premature." (Emphasis omitted.)

On July 19, 2017, this court, sua sponte, ordered the trial court to articulate "whether a judgment of strict foreclosure entered in this case and, if so, when did the judgment enter and did the law days run." Judge Mintz did not directly answer the articulation request. Rather, the court recounted findings made by Judge Nadeau at the October 5 and November 15, 2006 hearings and discussed the proceedings that occurred during the previous appeal regarding the appellate stay.[15]

The court concluded its "articulation" by stating: "It appears that if the appellate stay was in effect based on the appeal of November, 2006, that the law days have not run." The converse, of course, is also true—if the appellate stay was *not* in effect based on the November, 2006 appeal, the law days have expired.[16]

We acknowledge that our resolution of the mootness issue raised in the motion to dismiss is intertwined with the merits of the defendant's appeal. More particularly, as noted by the defendant in her opposition to the motion, whether this court can afford the defendant any practical relief regarding the trial court's actions challenged on appeal turns on whether a judgment of strict foreclosure was rendered in this matter, including the setting of law days, and whether those law days passed, thereby effectuating the passage of title. The defendant sought to clarify those issues in her motion, which the trial court denied. Furthermore, our resolution of the plaintiff's motion to dismiss the appeal requires us to consider the proceedings before Judge Nadeau as reflected in the October 5 and November 14, 2006 transcripts, which the trial court incorporated into the record in response to the plaintiff's motion to correct.

As the court observed in *First National Bank of Chicago* v. *Luecken*, 66 Conn. App. 606, 610, 785 A.2d 1148 (2001), cert. denied, 259 Conn. 915, 792 A.2d 851 (2002), we note that "[w]hile it may generally be prudent, in cases where a motion to dismiss goes to the heart of the appeal itself, to defer action until after the parties have fully briefed any interrelated issues, in this case we grant the plaintiff's motion to dismiss because the added delay incident to deferral of the question would not, under the facts of this case, further our policy of expediting foreclosure cases whenever possible." See also *Argent Mortgage Co., LLC* v. *Huertas*, 288 Conn. 568, 575–76, 953 A.2d 868 (2008) (resolving substantive issues raised on appeal that were inextricably intertwined with question of mootness).

Because mootness implicates our subject matter jurisdiction; *Connecticut Coalition Against Millstone* v. *Rocque*, 267 Conn. 116, 125, 836 A.2d 414 (2003); it is a proper basis upon which to seek the dismissal of an appeal. See Practice Book § 66-8. "[I]t is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . [If] events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Internal quotation marks omitted.) *Giaimo* v. *New Haven*, 257 Conn. 481, 492–93, 778 A.2d 33 (2001).

"In Connecticut, a mortgagee has legal title to the mortgaged property and the mortgagor has equitable title, also called the equity of redemption. . . . The

equity of redemption gives the mortgagor the right to redeem the legal title previously conveyed by performing whatever conditions are specified in the mortgage, the most important of which is usually the payment of money. . . . Under our law, an action for strict foreclosure is brought by a mortgagee who, holding legal title, seeks not to enforce a forfeiture but rather to foreclose an equity of redemption unless the mortgagor satisfies the debt on or before his law day." (Citations omitted.) *Barclays Bank of New York* v. *Ivler*, supra, 20 Conn. App. 166. Accordingly, "[if] a foreclosure decree has become absolute by the passing of the law days, the outstanding rights of redemption have been cut off and the title has become unconditional in the plaintiff, with a consequent and accompanying right to possession. The qualified title which the plaintiff had previously held under his mortgage had become an absolute one." (Internal quotation marks omitted.) *City Lumber Co. of Bridgeport, Inc.* v. *Murphy*, 120 Conn. 16, 25, 179 A. 339 (1935). In other words, if the defendant's equity of redemption was extinguished by the passing of the law days, we can afford no practical relief by reviewing the rulings of the trial court now challenged on appeal, as doing so would have no practical effect or alter the substantive rights of the parties.

In a foreclosure action, an appealable final judgment exists once the trial court has determined liability and set forth the essential components of a foreclosure judgment, such as the amount of the debt owed and whether a foreclosure should be strict or by sale. *Essex Savings Bank* v. *Frimberger*, 26 Conn. App. 80, 80–81, 597 A.2d 1289 (1991). If the judgment is by strict foreclosure, a final judgment also includes the setting of law days. See *Connecticut National Bank* v. *L & R Realty*, 40 Conn. App. 492, 493, 671 A.2d 1315 (1996) (dismissing for lack of final judgment appeal taken from strict foreclosure judgment that was silent as to law days). A judgment is binding and final for purposes of appeal if notice of that judgment is given to the parties in open court. See Practice Book § 63-1 (b).

Here, it is apparent from our review of the transcripts submitted at the hearing on the defendant's motion[17] that a judgment of strict foreclosure was rendered on October 5, 2006, in open court, with all parties in attendance. At that hearing, the court made specific and definite findings regarding the amount of the debt owed and the value of the property, and it informed the parties that it was rendering a judgment of strict foreclosure. The court also expressly set law days to commence on February 6, 2007.

It is axiomatic that, with limited exceptions, an appellate stay of execution arises from the time a judgment is rendered until the time to file an appeal has expired. Practice Book § 61-11 (a). If an appeal is filed, any appellate stay of execution in place during the pendency

of the appeal period continues until there is a final disposition of the appeal or the stay is terminated. Practice Book § 61-11 (a) and (e). If no appeal is filed, the stay automatically terminates with the expiration of the appeal period.

Here, although both the previous appeal and cross appeal were taken from the final judgment rendered on the counterclaims in this matter; no appeal was ever filed from the judgment rendered on the foreclosure complaint. Neither party challenged any aspect of the judgment of strict foreclosure, as reflected in our decision resolving that prior appeal. *Sovereign Bank* v. *Licata*, supra, 116 Conn. App. 485–86 and n.3. Our rules of practice unquestionably establish that, for purposes of filing an appeal, a final judgment disposing of a counterclaim is separate and distinct from a judgment on the associated complaint. See Practice Book §§ 61-2 through 61-4. For example, a judgment rendered on an entire counterclaim is an immediately appealable independent judgment even if an undisposed complaint remains in the case. Practice Book § 61-2; *Ace Equipment Sales, Inc.* v. *Buccino*, 273 Conn. 217, 223 n.4, 869 A.2d 626 (2005). Such a final judgment on a counterclaim establishes a distinct appeal period from the appeal period related to the judgment on a complaint in the same case. See Practice Book §§ 61-2 and 61-3. As a result of these different appeal periods, different appellate stays of execution arise, and any automatic stay that is extended as the result of filing an appeal from a counterclaim will not stay proceedings to enforce or carry out the judgment on the complaint.

Such a construction of our rules of practice is consistent with our Supreme Court's decision in *Cronin* v. *Gager-Crawford Co.*, 128 Conn. 401, 23 A.2d 149 (1941). In that case, which began as an action for strict foreclosure, the trial court eventually rendered a judgment of foreclosure by sale but denied the plaintiffs' claim for a deficiency judgment. Id., 402. The plaintiffs filed an appeal challenging only that part of the judgment denying their claim for a deficiency judgment. Id., 403. The defendant filed a motion to erase the appeal, now a motion to dismiss, because it was taken from only a portion of the underlying judgment. Id. Our Supreme Court, in denying the motion to dismiss, stated: "We can see no valid reason why an appeal may not properly be taken from a portion of a judgment which is so distinct and severable that, should error be found and the case remanded for further proceedings, the remaining portion would be in no way affected, and we see distinct advantages in allowing such an appeal. The effect would be that the stay of execution incident to the appeal *would not affect the portion of the judgment not appealed from and it would become effective without the delay resulting from the appeal.*" (Emphasis added.) Id., 404.

Because no appeal was filed from the judgment of strict foreclosure in this case, any initial appellate stay of execution that arose when that judgment was rendered expired after the appeal period for that judgment had run, which was long before the law days set by the court passed. Further, neither party sought a discretionary stay of execution with respect to the foreclosure judgment.[18] Accordingly, because there was no appellate stay in effect when the law days began to run on February 6, 2007, absolute title to the property transferred to the plaintiff as a matter of law after all law days expired.

It is true that the record reflects some later confusion by the parties, the trial court and this court regarding whether the foreclosure judgment had been subject to an appellate stay and whether the law days needed to be reset. Any such misstatements or errors, however, did nothing to alter the legal reality—law days passed and title to the property became absolute in the plaintiff. Furthermore, the defendant admittedly has known for years that the plaintiff regarded the property as its own, and she never objected to the application for an execution of ejectment, the court's issuance of a foreclosure certificate or the plaintiff's receipt of insurance proceeds for the property. Accordingly, if there was any ambiguity in the record regarding the status of this foreclosure action, it has existed with the knowledge and acquiescence of the defendant. It was not until the plaintiff sought to sell the property during the pendency of its bankruptcy action that the defendant claimed any need for clarification.

It is also true that the defendant in this case did not seek to have the trial court open the foreclosure judgment and restore title in the property to her, but only sought guidance as to the status of the foreclosure judgment. Nevertheless, the intent of her motion for clarification was to call into question whether the law days had passed and, therefore, whether she retained some property interest sufficient to prevent the plaintiff from selling the property. Having determined that a judgment of strict foreclosure was rendered in favor of the plaintiff, that the judgment properly included the setting of law days, and that the law days passed without violating any appellate stay of execution, we conclude that it would serve no useful purpose to engage in what would amount to a purely academic discussion of the propriety of the trial court's responses to the parties' postjudgment motions challenged in the present appeal. Accordingly, we conclude that this appeal is moot, and we grant the plaintiff's motion to dismiss on that basis.

The appeal is dismissed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] Cynthia Licata is also known and referred to in certain pleadings as

Cynthia Cortese. In addition to Cynthia Licata, the following parties were named as additional defendants in the underlying foreclosure action: James Licata, Susan Braun, Edward Stanley and First Connecticut Consulting Group, Inc. Because Cynthia Licata is the only defendant participating in the present appeal, we refer to her in this opinion as the defendant and to the remaining defendants by name.

[2] During the pendency of the foreclosure proceedings, the original named plaintiff, Sovereign Bank, assigned the relevant note and mortgage to Seven Oaks Partners, LP, which later was substituted as the plaintiff in place of Sovereign Bank. Our references to the plaintiff are to Seven Oaks Partners, LP.

[3] Because we dismiss the appeal on mootness grounds, we do not address whether the court's postjudgment rulings constituted appealable final judgments. See *State* v. *Abushaqra*, 153 Conn. App. 282, 283 n.2, 100 A.3d 1014 (dismissing appeal on mootness grounds without resolving final judgment question), cert. denied, 315 Conn. 906, 104 A.3d 757 (2014).

[4] James Licata later conveyed his interest in the second parcel to the defendant.

[5] First Connecticut Consulting Group, Inc., was owned by James Licata and the defendant and specialized in arranging financing for financially distressed parties. *In re First Connecticut Consulting Group, Inc.*, 340 B.R. 210, 214 (D. Vt. 2006), aff'd, 254 Fed. Appx. 64 (2nd. Cir. 2007).

[6] James Licata and First Connecticut Consulting Group, Inc., filed for bankruptcy protection in June and July, 2002. As a result, the foreclosure action was stayed as to those parties only. See Practice Book § 14-1.

[7] In *Benvenuto* v. *Mahajan*, 245 Conn. 495, 496, 715 A.2d 743 (1998), our Supreme Court held that a judgment of strict foreclosure is an appealable final judgment even if the court has not made a determination as to an award of attorney's fees.

[8] In relevant part, the court stated: "[T]he court points . . . the parties to the law date which has previously been set for Feb[ruary]—*and the court pronounces the final result of a judgment via strict foreclosure on a debt which was pronounced at the last hearing.*" (Emphasis added.)

[9] The file contains a case disposition form, JD-CL-37 (Rev. to 2000), completed by the trial court clerk, indicating that the case was disposed of on November 15, 2006, by a "[j]udgment after completed trial, non-jury, for: other." It is unclear how this notation accurately reflects the disposition that transpired in this matter. If it was intended to reflect the foreclosure judgment, which was the only "non-jury" matter, there was a separate box on the form to indicate a judgment of strict foreclosure. In any event, that form is a clerical document that is in no manner dispositive of whether a judgment has been rendered in a particular case or the form of that judgment. In other words, erroneous coding of a judgment by a clerk cannot transform the nature of the judgment from that which was actually rendered by the court.

[10] In response to a request for articulation by the defendant as to the basis for its decision to terminate the stay, the trial court acknowledged, but failed to credit, the defendant's argument that nothing could be done to return title to the defendant even if she prevailed on appeal. The court explained: "If that statement were indeed true, it would suggest that this court's lifting of the stay was not well pronounced. However, the court felt that a certain appellate result would reverse the foreclosure this trial court allowed, requiring a return of the property from the plaintiff to defendant."

[11] *Barclays Bank of New York* v. *Ivler*, supra, 20 Conn. App. 166–67, stands for the proposition that law days that are set forth in a judgment of strict foreclosure can have no legal effect if an appellate stay is in effect because to do so would result in an extinguishment of the right of redemption pending appeal.

[12] Because in the prior appeal the defendant never filed a brief in response to the claims raised by the plaintiff, or in support of her own cross appeal, the cross appeal was dismissed, and the appeal was decided on the basis of the plaintiff's brief and argument only. *Sovereign Bank* v. *Licata*, supra, 116 Conn. App. 486 n.3.

[13] The defendant filed a cross appeal with the Supreme Court, which the plaintiff moved to dismiss. The court granted the motion to dismiss on February 9, 2010.

[14] Although generally a motion to dismiss an appeal must be filed within ten days of the filing of the appeal, a motion to dismiss based on "lack of jurisdiction may be filed at any time." Practice Book § 66-8.

[15] With respect to Judge Nadeau's findings, Judge Mintz stated in relevant

part: "The court articulates as follows: On November 14, 2006, Judge Nadeau on page 116 of the transcript stated the following: '[H]aving said that, the court points the parties to the law date which has previously been set for February and the court pronounces the final result of a judgment via strict foreclosure on a debt which was pronounced at the last hearing.' The last hearing Judge Nadeau is referring to occurred on October 5, 2006. At that hearing, on page seventy-eight of the transcript, Judge Nadeau determined the debt to be $2,947,595.84. He went on to find the reasonable value of the property to have been 'testified to effectively' as $2.5 million. On page seventy-nine of said transcript, Judge Nadeau awarded a $150 title fee, and an appraiser's fee of $250. On page eighty-seven [to] eighty-eight, Judge Nadeau discusses different law days . . . . It appears that Judge Nadeau entered February 6 as the law date."

[16] On August 10, 2017, this court ordered the parties to file simultaneous supplemental memoranda addressing the final judgment issue further in light of the court's articulation. Each party complied with our order. Both parties had a full opportunity to brief the question of mootness in support of or in opposition to the motion to dismiss.

[17] Our reliance on the transcripts in the record may, at first blush, appear at odds with the defendant's challenge on appeal to the court's decision to include them in the record in the first instance. We do not share that concern for several reasons. First, the defendant has never challenged the authenticity of the transcripts or claimed that they fail to represent what transpired before Judge Nadeau at those hearings. Second, this court is entitled to take judicial notice of any proceeding between the parties that occurred and to order the record perfected to the extent necessary to conduct our review. Practice Book § 60-2; see *In re Jah'za G.*, 141 Conn. App. 15, 24, 60 A.3d 392, cert. denied, 308 Conn. 926, 64 A.3d 329 (2013). Furthermore, even without direct reference to the transcripts, Judge Mintz, in his articulation, sets forth all the necessary findings based upon his review of the transcripts. That articulation and its findings were not challenged by the parties and, thus, are properly part of the record before this court. See footnote 15 of this opinion.

[18] Certainly, although no automatic stay may arise, any party may request the imposition of a *discretionary* stay pending appeal in accordance with Practice Book § 61-12. Here, the defendant never requested the trial court to impose a stay of the foreclosure judgment pending resolution of the counterclaim appeal and cross appeal.

———————————————