******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

AMY MASE *v.* RIVERVIEW REALTY
ASSOCIATES, LLC, ET AL.
(AC 42530)

Alvord, Prescott and Suarez, Js.

*Syllabus*

The plaintiff sought to foreclose a mortgage on certain real property owned
by the defendant R Co. At the conclusion of a bench trial, the trial court,
in an oral decision, rendered a judgment of strict foreclosure against R
Co. Prior to the expiration of the law day, R Co. appealed, claiming that
the court erred in denying its motion to dismiss the action, that the
judgment of strict foreclosure was defective, and that the court's appoint-
ment of a receiver was improper. After the appeal was filed, the court
filed an order, dated as of the date of the trial, in which it stated that
a judgment of strict foreclosure shall enter and in which it made a
finding as to the amount of the debt. The defendant did not amend its
appeal to challenge this order. *Held* that the appeal was dismissed
because it was not taken from a final judgment: the trial court, by means
of its order, dated as of the date of the trial, but not filed until after the
appeal was filed, effectively issued a nunc pro tunc order, making its
finding concerning the amount of the debt effective as of the date of
its judgment of strict foreclosure, but the court's nunc pro tunc order
could not rectify the jurisdictional defect that existed at the time the
appeal was taken; there could be no dispute that a condition precedent
to the taking of an appeal, namely, a finding with respect to the amount
of the debt, was made only after the appeal was filed and after the law
day was set to expire, and, thus, at the time that R Co. filed the appeal,
a final judgment did not exist, and, accordingly, in the absence of a
final judgment, this court dismissed the appeal.

Argued November 19, 2020—officially released November 16, 2021

*Procedural History*

Action to foreclose a mortgage on certain of the
named defendant's real property, and for other relief,
brought to the Superior Court in the judicial district of
New London, where the court, *Cosgrove, J.*, denied the
defendants' motion to dismiss; thereafter, the named
defendant was defaulted for its failure to comply with
the court's order to make payments to a receiver; subse-
quently, the matter was tried to the court, *Hon. Joseph
Q. Koletsky*, judge trial referee; judgment of strict fore-
closure, from which the named defendant appealed to
this court. *Appeal dismissed.*

*Scott M. Schwartz*, for the appellant (named defen-
dant).

*Frank J. Liberty*, with whom, on the brief, was *Nicho-
las N. Mingione*, for the appellee (plaintiff).

*Opinion*

SUAREZ, J. The defendant Riverview Realty Associates, LLC, appeals from the judgment of strict foreclosure rendered by the trial court in favor of the plaintiff, Amy Mase.[1] The defendant claims that (1) the court erred in denying its motion to dismiss the foreclosure action on the ground that the plaintiff failed to provide notice of default and acceleration in accordance with the terms of the subject note and mortgage, (2) the judgment of strict foreclosure was grossly defective for several reasons, including but not limited to, the court's failure to determine the fair market value of the subject premises and the amount of the debt, and (3) the court's appointment of a receiver was improper for several reasons. We dismiss the appeal because it was not taken from a final judgment.

The following procedural history is relevant to the issues raised in this appeal. In her amended complaint dated May 22, 2015, the plaintiff alleged in count one that, on or about September 1, 2011, the defendant, a single-member limited liability company owned by Albert Farrah, executed a promissory note in the amount of $640,000 in favor of 111 Bank Street, LLC (111 Bank Street). On or about September 1, 2011, the defendant secured the note by mortgaging its interest in the subject property, which is located at 109–111 Bank Street in New London, to 111 Bank Street. On or about December 12, 2011, 111 Bank Street assigned its interest in the note and mortgage to the plaintiff and provided notice of the assignment to the defendant. The plaintiff further alleged that, on July 7, 2014, a notice of default was sent to the defendant. The plaintiff alleged that $218,647.68 was "presently due and owing," and that the defendant was "in arrears in property taxes totaling $21,410.86, causing waste of the premises." The plaintiff alleged that, pursuant to the notice given on July 7, 2014, she had exercised her option "to declare the entire note and mortgage in default and due and payable immediately." The plaintiff alleged that the defendant Thames Restaurant Group, LLC (Thames), a single-member limited liability company also owned by Farrah, may claim an interest in the premises as a tenant.

In the second and final count of the complaint, the plaintiff relied on her allegations in count one and further alleged that, on December 17, 2014, a notice of default for failure to pay taxes was sent to the defendants pursuant to the notice requirements of the mortgage, as taxes owed prior to January 31, 2015, remained unpaid. The plaintiff alleged that "[t]he failure to cure the default resulted in an acceleration of the mortgage" and that "the entire amount is due and payable immediately."[2] The plaintiff sought strict foreclosure of the mortgage, immediate possession of the subject property, a deficiency judgment against the defendant, the

immediate appointment of a receiver, reasonable attorney's fees, costs, and any additional relief awarded by the court.

In their answer to the plaintiff's initial complaint dated August 12, 2014, the defendants admitted that the defendant had executed the promissory note in favor of 111 Bank Street and that it had secured the note by mortgaging its interest in the subject property to 111 Bank Street. With respect to the remainder of the allegations set forth in the initial complaint, the defendants either denied the allegations or left the plaintiff to her proof.

The defendants raised four special defenses. First, the defendants alleged that the defendant had "tendered many payments of the mortgage which were either held and not deposited, [were] returned, or, if sent by certified or registered mail [with] return receipt requested, were refused." Second, the defendants alleged that "[t]he notice of default and acceleration is defective and deprives the plaintiff of standing to bring this action. The plaintiff herein sent a letter dated July 7, 2014, purporting to be a notice of default and acceleration under the loan documents; however, said notice was defective since it did not adequately and accurately set forth the terms upon which the claimed default could be cured." Third, the defendants alleged that the plaintiff "is equitably estopped from claiming a breach of the loan documents since her actions contributed to and were a significant cause of any claimed defaults on the part of the defendants." Fourth, the defendants alleged that "[a]ny default by the defendants was not wilful but due to mistake or accident." By way of reply, the plaintiff denied each special defense.

Also, in November, 2015, the defendants filed a motion to dismiss the action and a supporting memorandum of law in support of the motion. They argued that the court lacked subject matter jurisdiction over the action because the notice of default and acceleration sent to the defendant on July 7, 2014, although timely, was defective in that it overstated the amount to cure the default. The plaintiff filed an objection to the motion to dismiss. After the defendants filed a supplemental memorandum of law in support of their motion to dismiss, the court, *Cosgrove, J.*, denied the motion to dismiss.

In October, 2014, the plaintiff filed a motion for the appointment of a receiver, and the defendants objected to the motion. The plaintiff argued that the appointment was a matter of right under the terms of the note and mortgage in light of the defendant's failure to make payments on the note or to pay property taxes for more than two years. The court granted the motion.[3] In December, 2016, the court, *Hon. Joseph Q. Koletsky*, judge trial referee, amplified the receiver's powers "so that the receiver must forthwith commence eviction

from the business entities that are defendants in this case . . . ."

On May 3, 2017, the plaintiff filed a motion requesting that the receiver disburse a portion of the funds held in escrow for the payment of property taxes. The plaintiff represented therein that the defendant had failed to make court-ordered payments to the receiver and had failed to pay property taxes as required pursuant to the terms of the mortgage. On that same date, the plaintiff filed a motion for judgment on the grounds that the defendant had been ordered to make payments to the receiver in the amount of $4200 per month, no payments had been made in 2017, and the plaintiff was entitled to judgment in her favor as a consequence of the defendant's failure to comply with the court's order. At a hearing on June 14, 2017, Judge Koletsky entered a default against the defendant for its failure to comply with the court's order to make payments to the receiver.

In January, 2017, Thames filed a notice of bankruptcy filing under chapter 7 of the United States Bankruptcy Code. On June 28, 2017, Thames filed a notice of bankruptcy filing under chapter 11 of the United States Bankruptcy Code. On September 11, 2018, the plaintiff filed a notice that the United States Bankruptcy Court had granted her relief from the automatic stay provision, thereby permitting her to exercise her rights, if any, with respect to the subject property. On that same date, the plaintiff, relying on the order of the bankruptcy court, filed a motion to appoint herself as a permanent receiver with respect to the subject property. On October 29, 2018, over the defendants' objection, Judge Koletsky granted the plaintiff's proposed order appointing her as the receiver and delineating her rights as receiver.

A trial took place before Judge Koletsky on January 9, 2019. At the trial, the plaintiff presented her own testimony, as well as the testimony of Shannon Heap, a certified public accountant. The plaintiff also presented documentary evidence. At the conclusion of the trial, the plaintiff's attorney moved for a judgment of strict foreclosure against the defendant. The plaintiff's attorney asked the court to "keep the case open" with respect to its action against Thames so that, once Thames' bankruptcy was "closed," the plaintiff could move to eject that entity from the subject premises. At the conclusion of the trial on January 9, 2019, the court, by means of a decision announced orally, rendered "[a] [j]udgment of strict foreclosure" against the defendant and in favor of the plaintiff. The court set a law day of January 30, 2019.

On January 28, 2019, prior to the expiration of the law day, the defendant timely filed the present appeal. On February 1, 2019, after the appeal was filed, the court filed an order, which was dated January 9, 2019, and made part of the court file, in which it stated:

"Following a hearing on the matter in which testimony was heard, judgment of strict foreclosure shall enter in favor of the plaintiff against [the defendant]. The amount of the debt is $1,159,902.32. The defendant's law day is set for January 30, 2019." This was the first time that the court made a finding as to the amount of the debt. Following the court's order, the defendant did not attempt to challenge the court's order by amending the present appeal; see Practice Book § 61-9; or by seeking permission to file a late appeal for good cause shown. See Practice Book § 60-2 (5).

The court's judgment file, which was filed on August 20, 2019, sets forth the following facts.[4] It states that "[t]he court entered judgment of strict foreclosure at the hearing [on January 9, 2019], setting a law day for [the defendant] . . . and, additionally, finding the judgment debt against [the defendant]." The judgment file also states that "the court finds that the plaintiff has proven her entitlement to damages, as against [the defendant], in the amount of $1,159,902.32, with the law day as January 30, 2019. Accordingly, judgment of strict foreclosure shall enter by order as of January 9, 2019, in such amount, pursuant to such written opinion dated that date but filed by the court by 'Recordation of Filing' on February 1, 2019 . . . ."

After this court heard oral argument in the present appeal, we sua sponte questioned whether the appeal was taken from an appealable final judgment in light of the fact that, at the time the appeal was taken, the court had not determined the amount of the debt. "We [may raise], on our own motion, the question of whether the plaintiff's appeal has been taken from a final judgment. . . . The lack of a final judgment implicates the authority of this court to hear the appeal because it is a jurisdictional defect. . . . Thus, even where the appellee fails to bring to our attention the lack of a final judgment, either by motion to dismiss or in its brief, or at oral argument, we must, nonetheless, act sua sponte." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Cruz* v. *Gonzalez*, 40 Conn. App. 33, 35, 668 A.2d 739 (1995).

As a result of our final judgment concerns, we ordered the parties to file supplemental briefs "setting forth reasons, if any, why the appeal should not be dismissed for the lack of an appealable final judgment in light of the fact that the defendant . . . filed the present appeal on January 28, 2019, and the [trial] court did not determine the amount of the debt until February 1, 2019." We have received the parties' supplemental briefs, and we have carefully considered the arguments raised therein in our resolution of the present appeal.

In her supplemental brief, the plaintiff argues that the present appeal should be dismissed for lack of a final judgment.[5] The defendant does not dispute that, at the time that the trial court rendered its judgment

of strict foreclosure on January 9, 2019, it "did not have a finding of the mortgage debt, necessary for redemption, nor a determination of [the] value of the subject property." The defendant acknowledges that the court's judgment "was incomplete for lack of a determination of the judgment debt." The defendant also does not dispute that the court did not determine the amount of the debt until it issued its order on February 1, 2019, after it had filed the present appeal. Finally, the defendant does not dispute that, at the time that it filed its appeal, it had knowledge of the court's January 9, 2019 ruling, which it now characterizes as a "defective judgment" of strict foreclosure.

Despite acknowledging the foregoing procedural facts, the defendant urges us to conclude that the appeal should not be dismissed. On the one hand, the defendant suggests that this court should treat the appeal as having been taken from a final judgment because the court "backdated" its order to the date of its initial ruling, thereby giving its ruling "the appearance of a full judgment . . . ." Likewise, the defendant argues that the court's docket, "on its face," suggests that the court had rendered an appealable final judgment on January 9, 2019.[6] On the other hand, the defendant argues that "[t]he postappeal order should be considered a nullity." In this regard, the defendant asserts that the court did not provide the parties notice of the order that it filed on February 1, 2019. Thus, the defendant argues, the court's order of February 1, 2019, did not give rise to a new appeal period. In light of the foregoing, the defendant argues that if it did not file an appeal on January 29, 2019, it would have "risked that the plaintiff would file a certificate of foreclosure, and thereafter take the position that no [finding of debt] was required . . . and file a certificate of foreclosure in the land records. Such circumstances could have precluded a later appeal based on the running of the law days, claimed vesting of title, and filing of the certificate of foreclosure."[7]

It is well settled that, "[i]n a foreclosure action, an appealable final judgment exists once the trial court has determined liability and set forth the essential components of a foreclosure judgment, such as the amount of the debt owed and whether a foreclosure should be strict or by sale. . . . If the judgment is by strict foreclosure, a final judgment also includes the setting of law days. . . . A judgment is binding and final for purposes of appeal if notice of that judgment is given to the parties in open court. See Practice Book § 63-1 (b)." (Citations omitted.) *Sovereign Bank* v. *Licata*, 178 Conn. App. 82, 98, 172 A.3d 1263 (2017). It also is well settled that a judgment of foreclosure constitutes an appealable final judgment only after the court has determined the amount of the debt. See, e.g., *Danzig* v. *PDPA, Inc.*, 125 Conn. App. 254, 261, 11 A.3d 153 (2010), cert. denied, 300 Conn. 920, 14 A.3d 1005 (2011), cert.

denied, 564 U.S. 1044, 131 S. Ct. 3077, 180 L. Ed. 2d 899 (2011); *Capp Industries, Inc.* v. *Schoenberg*, 104 Conn. App. 101, 109 n.5, 932 A.2d 453, cert. denied, 284 Conn. 941, 937 A.2d 696 (2007), and cert. denied, 284 Conn. 941, 937 A.2d 697 (2007); see also, e.g., *Morici* v. *Jarvie*, 137 Conn. 97, 103, 75 A.2d 47 (1950).

As our discussion of the unique procedural history of this case reflects, the trial court, by means of its order that was dated January 9, 2019, but was filed on February 1, 2019, effectively issued a nunc pro tunc order, making its finding concerning the amount of the debt effective as of the date of its judgment of strict foreclosure, January 9, 2019.[8] As we evaluate the issue of whether we have jurisdiction over this appeal, however, we do not consider the court's subsequent order, including whether it somehow misled the defendant.[9] This is because we are obligated to evaluate whether this court had jurisdiction over the defendant's appeal at the time that it was taken. Thus, the trial court's nunc pro tunc order could not rectify the jurisdictional defect that existed at the time the appeal was taken. As this court has explained, "[b]ecause a final judgment is a condition *precedent* to the taking of an appeal . . . we do not ask if jurisdiction arose at some time during the appeal, but determine only whether we had jurisdiction over the appeal at the time it was taken." (Citation omitted; emphasis altered.) *Annecharico* v. *Patterson*, 38 Conn. App. 338, 339–40, 660 A.2d 880 (1995).

In the present case, there can be no dispute that a condition precedent to the taking of an appeal—namely, a finding with respect to the amount of the debt—was made only after the appeal was filed and after the law day was set to expire. Thus, we conclude that, at the time that the defendant filed the appeal on January 28, 2019, a final judgment did not exist. In the absence of a final judgment, the proper action by this court is to dismiss the appeal. See, e.g., *Quinn* v. *Standard-Knapp, Inc.*, 40 Conn. App. 446, 448–49, 671 A.2d 1333 (1996).

The appeal is dismissed.

In this opinion the other judges concurred.

[1] The plaintiff also named Thames Restaurant Group, LLC, as a defendant in the underlying foreclosure action, but that party is not participating in this appeal. Unless otherwise indicated, the defendant in this opinion refers to Riverview. Our use of the defendants in this opinion refers to Riverview and Thames Restaurant Group, LLC.

[2] The plaintiff attached as exhibits to her amended complaint a copy of the note, a copy of the mortgage, a copy of the assignment of the note and mortgage, a copy of the notice of assignment sent to the defendant, and a copy of the July 7, 2014 notice of default sent to the defendant.

[3] The receiver, Northeast Property Group, Inc., was discharged as receiver per order of the court on September 14, 2018.

[4] Attached to the judgment file is a copy of the court's order dated January 9, 2019. Also attached to the judgment file is a document titled "Recordation of Filing," which reflects that the order, though dated January 9, 2019, was, as is stated in the judgment file, not actually filed until February 1, 2019. The defendant has included these filings in the appendix to its principal appellate brief.

[5] The plaintiff also asserts an alternative jurisdictional ground that, she argues, requires the appeal to be dismissed. Specifically, she argues that

the appeal is moot because the law days have expired and "the decree of the trial court became absolute . . . ." The plaintiff thereby argues that title in the subject property has vested unconditionally in her. The plaintiff's argument implicates the familiar principle of law that, "[i]n Connecticut, the passage of the law days in an action for strict foreclosure extinguishes a mortgagor's equitable right of redemption and vests absolute title in the encumbrancer." *U.S. Bank National Assn.* v. *Rothermel*, 339 Conn. 366, 375,           A.3d       (2021). We also note that "[i]t is a [well settled] general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . An actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal." (Internal quotation marks omitted.) *Ocwen Federal Bank*, *FSB* v. *Charles*, 95 Conn. App. 315, 325, 898 A.2d 197, cert. denied, 279 Conn. 909, 902 A.2d 1069 (2006).

We are not persuaded by the plaintiff's mootness argument. As the plaintiff correctly has acknowledged elsewhere in her supplemental brief to this court, the trial court did not find the amount of the debt, which is a necessary component of a valid strict foreclosure judgment, until after the law days had expired. Because a legally enforceable final judgment of strict foreclosure did not exist prior to the expiration of the law days, we disagree with the plaintiff that the expiration of the law days that were set by the court on January 9, 2019, resulted in the vesting of title in the plaintiff, thereby rendering this appeal moot.

[6] We observe that, consistent with the defendant's argument, the court's docket reflects that the order filed by the court on February 1, 2019, appears as having been filed on January 9, 2019, the date on which the court orally rendered its judgment of strict foreclosure. The court's judgment file, however, reflects that the order was not filed until February 1, 2019. See footnote 4 of this opinion.

[7] In support of this argument, the defendant refers to the argument advanced by the plaintiff in its appellate brief that the trial court's failure to determine the amount of the debt did not give rise to a defective judgment because, due to a pending bankruptcy action, the defendant lacked the financial ability to redeem the debt.

[8] The defendant has not appealed from the issuance of the nunc pro tunc order, and, thus, the propriety of the order is not before us. Nonetheless, we observe that "[a] nunc pro tunc entry is an entry made now of something actually previously done to have effect of the former date. 'Nunc pro tunc' literally means 'now for then.' " (Footnote omitted.) 56 Am. Jur. 2d 99, Motions, Rules, and Orders § 62 (2020). "A nunc pro tunc order generally is used to correct a ministerial or clerical error or oversight and cannot be used to correct a judicial error, or cure a jurisdictional defect." (Footnotes omitted.) Id., p. 100.

[9] The defendant suggests, but does not argue, that good cause existed for its failure to appeal from the final appealable judgment that resulted once the court determined the amount of the debt. Mindful of the unique procedural facts of the present case, we observe that the dismissal of the present appeal does not interfere with the defendant's right to file a motion for permission to file a late appeal from the court's judgment, encompassing its order filed on February 1, 2019. Such a motion would afford this court a procedurally appropriate opportunity to consider whether an untimely appeal should be permitted for good cause shown.

"The rules of practice vest broad authority in the Appellate Court for the management of its docket." (Internal quotation marks omitted.) *Alliance Partners*, *Inc.* v. *Voltarc Technologies*, *Inc.*, 263 Conn. 204, 210, 820 A.2d 224 (2003). In the absence of a jurisdictional barrier, this court has the discretion to determine whether to permit a late appeal to be heard. Id.; see also *Georges* v. *OB-GYN Services*, *P.C.*, 335 Conn. 669, 687–89, 240 A.3d 249 (2020). This court may "order that a party for good cause shown may file a late appeal . . . ." Practice Book § 60-2 (5). "[F]or . . . good cause shown, the court in which the appellate matter is pending may suspend the requirements or provisions of any of these rules on motion of a party . . . ." Practice Book § 60-3.