******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

## U.S. BANK, NATIONAL ASSOCIATION, TRUSTEE
## *v.* MELISSA L. MAMUDI ET AL.
## (AC 42415)

DiPentima, C. J., and Keller and Norcott, Js.

*Syllabus*

The plaintiff bank sought to foreclose a mortgage on certain real property owned by the defendant M. The property was transferred several times via quitclaim deed and was eventually deeded to the defendants W Co. and P. Following the trial court's granting of the plaintiff's motion for judgment of strict foreclosure and the setting of law days, W Co. twice filed for bankruptcy under chapter 7 of the United States Bankruptcy Code (11 U.S.C. § 701 et seq.), and both petitions were dismissed by the Bankruptcy Court. Thereafter, the plaintiff filed a motion, to which W Co. and P did not object, for an order of no bankruptcy stay, alleging that, pursuant to statute (11 U.S.C. § 362), because W Co. had filed two bankruptcy proceedings within the previous year, which had both been dismissed, a stay would not automatically be imposed if W Co. filed a third petition for bankruptcy. After the trial court granted the plaintiff's motion to reset the law days following W Co.'s second bankruptcy filing, W Co. filed a third petition for bankruptcy four days before the law days were set to commence. The plaintiff then filed a second motion for order, to which W Co. and P did not object, seeking to establish that the law days had commenced and title to the subject property had vested in the plaintiff. Specifically, the plaintiff alleged that, pursuant to state statute (§ 49-15) and federal statute, 11 U.S.C. § 362, there was no automatic stay provision in effect following the filing of W Co.'s third petition for bankruptcy. The court granted both of the plaintiff's motions for order. Thereafter, the court granted the motion to intervene filed by the purchasers of the property, A and M, and A and M filed an application for an execution of ejectment to remove W Co. and P from the property. Thereafter, W Co. and P filed motions to reargue the court's granting of the plaintiff's motions for order, which the court denied as untimely, and W Co. and P appealed to this court. *Held* that there was no practical relief the trial court could have afforded W Co. and P, as title to the property had vested absolutely in the plaintiff after the passing of the law days: W Co. and P failed to redeem before the passing of the law days and they were not deprived of the right to appeal concerning the law days, as the twenty day period pursuant to the rules of practice (§ 11-12) to appeal from the trial court's granting of the plaintiff's motions for order expired before the law days commenced; moreover, W Co. and P's motions to reargue were filed approximately eight months after title in the property had vested in the plaintiff; accordingly, the trial court should have rendered judgment dismissing W Co. and P's motions to reargue as moot rather than denying those motions.

Argued January 14—officially released April 21, 2020

*Procedural History*

Action to foreclose a mortgage on certain real property owned by the named defendant, and for other relief, brought to the Superior Court in the judicial district of Danbury, where the court, *Mintz, J.*, granted the plaintiff's motion for summary judgment as to liability; thereafter, the court, *Pavia, J.*, rendered judgment of strict foreclosure; subsequently, the court, *Pavia, J.*, granted the motion to cite in Wellsville Properties, LLC, as a defendant filed by the defendant Laurie J. Pastor; thereafter, the court, *Russo, J.*, granted the motions to be cited in as a defendant and to open and extend the law days filed by John C. Pastor; subsequently, the

defendant Wellsville Properties, LLC, filed a notice of bankruptcy, which was dismissed; thereafter, the court, *Russo, J.*, granted the plaintiff's motion to reset the law days; subsequently, the defendant Wellsville Properties, LLC, filed a notice of bankruptcy, which was dismissed; thereafter, the court, *Russo, J.*, granted the plaintiff's motion to reset the law days; subsequently, the defendant Wellsville Properties, LLC, filed a notice of bankruptcy and the plaintiff filed a motion for order of no bankruptcy stay; thereafter, the court, *Russo, J.*, granted the plaintiff's motions for order; subsequently, the court, *Mintz, J.*, granted the motion to intervene filed by Armando Bernado et al.; thereafter, the court, *Russo, J.*, denied the motions filed by the defendant Wellsville Properties, LLC, et al. to reargue the court's granting of the plaintiff's motions for order, and the defendant Wellsville Properties, LLC, et al. appealed to this court. *Improper form of judgment*; *judgment directed.*

*Christopher G. Brown*, for the appellants (defendant Wellsville Properties, LLC, et al.).

*Tara L. Trifon*, with whom, on the brief, was *Melanie Dykas*, for the appellee (plaintiff).

*Scott M. Harington*, for the appellees (intervenors).

*Opinion*

NORCOTT, J. In this appeal, which stems from a fourteen year old foreclosure action, the defendants Wellsville Properties, LLC (Wellsville), and John C. Pastor (Pastor)[1] appeal from the judgment of the trial court denying, as untimely, their motions to reargue the court's decisions granting two motions for orders filed by the plaintiff, U.S. Bank, National Association, as Trustee for RASC 2005-AHL1.[2] On appeal, the defendants claim that (1) the court abused its discretion in denying their motions to reargue as untimely where, as here, those motions asserted mistakes of law in the court's rulings on the plaintiff's motions for orders, (2) the court erred in ruling that the law days were not "automatically vacated" pursuant to General Statutes § 49-15 (b) as a result of a bankruptcy petition filed by Wellsville on February 20, 2018, (3) the court improperly determined that the bankruptcy stay was eliminated by 11 U.S.C. § 362 (c) (4) (A) (i) (2012),[3] and (4) even if § 49-15 (b) does not apply, pursuant to federal law, 11 U.S.C § 108 (b) (2012),[4] Wellsville's bankruptcy petition extended the law days by up to sixty days to April 17, 2018, a date well past the February 20, 2018 date set forth in the foreclosure judgment. This action resulted in harm to the defendants in that they lost the right to move to open the judgment and to further extend the law days when the court ruled on the motions for orders on March 12, 2018, before the commencement of the extended law days on April 17, 2018. We conclude that there is no practical relief available to the defendants and, therefore, that the court should have dismissed as moot, rather than denied, their motions to reargue.

The record reveals the following undisputed relevant facts and procedural history. In June, 2005, Melissa L. Mamudi (Mamudi) had executed and delivered to Accredited Home Lenders, Inc., a note for a loan in the original principal amount of $880,000. As security for the note, Mamudi executed a mortgage on certain property she owned that was located at 148 North Lake Shore Drive in Brookfield (property). The mortgage subsequently was assigned to the plaintiff. After Mamudi defaulted on the note, the plaintiff, as the holder of the mortgage and note, elected to accelerate the balance due on the note and provided Mamudi with written notice of the default, which Mamudi neglected to cure. The plaintiff thereafter commenced the present action on December 1, 2006, seeking to foreclose the mortgage on the property. The trial court, *Mintz, J.*, granted the plaintiff's motion for summary judgment as to liability in May, 2007.

Pursuant to a quitclaim deed dated August 21, 2007, Mamudi deeded the property to SROTSAPNEVES-NLS, Inc., which, in turn, quitclaimed the property to Laurie J. Pastor on August 26, 2008. Laurie J. Pastor further deeded the property to herself and Wellsville via a quit-

claim deed dated June 3, 2011. Thereafter, Laurie J. Pastor quitclaimed her interest in the property to Pastor, which was recorded on the land records on November 6, 2012. Wellsville and Pastor have since been co-owners of the property. The plaintiff amended its complaint to reflect the ownership interests of Wellsville and Pastor.

On July 9, 2012, the court, *Pavia, J.*, rendered a judgment of strict foreclosure and determined the fair market value of the property to be $833,000, the amount of the debt as of that date to be $1,456,804.12, and certain other fees and costs. The court set law days to commence on November 13, 2012. As a result of bankruptcies filed by multiple defendants, the law days were reset multiple times. Relevant to this appeal, in response to a motion to open and extend the law days filed by Pastor, the court, *Russo, J.*, on March 14, 2017, ordered that the law days be extended for the final time to April 18, 2017. On April 17, 2017, prior to the commencement of the law days, Wellsville filed a petition under chapter 7 of the United States Bankruptcy Code; see 11 U.S.C. § 701 et seq. (2012); which was dismissed on August 4, 2017. Also, on July 13, 2017, the Bankruptcy Court had entered an order granting Pastor a bankruptcy discharge related to a chapter 7 bankruptcy petition that he had filed. Accordingly, on October 4, 2017, the plaintiff filed another motion to reset the law days, which the court granted on October 16, 2017. Specifically, the court found that the Bankruptcy Court had issued an order of discharge on July 13, 2017, allowing the plaintiff to proceed with the foreclosure. The court further determined the fair market value of the property and the amount of the debt, and set new law days to commence on December 12, 2017. On December 11, 2017, one day prior to the commencement of the law days, Wellsville filed a second bankruptcy petition, which was dismissed on January 2, 2018.

Thereafter, on January 8, 2018, the plaintiff filed a "Motion for Order of No Bankruptcy Stay," in which it alleged that because Wellsville had filed two bankruptcy proceedings that were pending within the previous year, both of which had been dismissed, if and when Wellsville filed a third bankruptcy proceeding, a stay would not automatically be imposed upon the filing of such a proceeding pursuant to 11 U.S.C. § 362 (a) (2012).[5] Therefore, the plaintiff alleged that with no automatic stay imposed, the law days would be permitted to commence as scheduled. On January 22, 2018, the court granted the plaintiff's motion to reset the law days following the bankruptcy filing, and made updated findings regarding the fair market value of the property and the amount of the debt and appraiser fees. It then set the law days to commence on February 20, 2018. Wellsville subsequently filed its third bankruptcy petition on February 16, 2018, as of which time the trial court had not yet acted on the plaintiff's motion for order. The

plaintiff, in turn, filed a second motion for order on February 27, 2018, seeking an order that the law days had commenced and that title had vested in the plaintiff on February 23, 2018. Specifically, the plaintiff alleged that (1) the automatic stay provision of § 49-15 (b) did not apply because Wellsville was not a mortgagor under § 49-15 (b), which applies only if a mortgagor files a bankruptcy petition, and (2) there was no automatic stay pursuant to 11 U.S.C. § 362 (c) (4) (A) (i) (2012), where, as here, Wellsville had filed two bankruptcy proceedings that were pending within the previous year and had been dismissed. Accordingly, the plaintiff alleged that because no automatic stay was in effect, with the passing of the law days title vested absolutely in the plaintiff. The defendants did not file objections to either of the plaintiff's motions for orders.

The Bankruptcy Court entered an order dismissing Wellsville's third bankruptcy petition on March 8, 2018, and notice of that dismissal was filed on March 13, 2018. On March 12, 2018, the trial court granted both of the plaintiff's motions for orders with orders that simply stated, "Granted." The plaintiff thereafter filed a proposed execution of ejectment on May 2, 2018, to which the defendants filed an objection, which was overruled by the court. The plaintiff subsequently filed a new application for execution of ejectment on July 5, 2018, to which the defendants again objected, claiming that title had not passed and noting that they had filed a writ of error[6] concerning the trial court's order overruling their objection to the execution of ejectment. The court never ruled on that objection, and an execution of ejectment issued on September 4, 2018. Subsequently, the purchasers of the property, Armando Bernardo and Maria Bernardo,[7] filed a motion to intervene in the action, which the court, *Mintz, J.*, granted on October 29, 2018. Afterward, the intervenors filed an application on November 1, 2018, for an execution of ejectment to remove the defendants from the property, to which the defendants objected. On December 3, 2018, the defendants filed two motions to reargue the court's March 12, 2018 decisions granting the plaintiff's motions for orders. The court, *Russo, J.*, denied as untimely both motions to reargue on December 6, 2018, and the defendants appealed to this court challenging the denials of their motions to reargue.

After this appeal was filed, the plaintiff filed a motion to dismiss the appeal, claiming that it was frivolous and that it was moot in that absolute title to the property had vested in the plaintiff when the defendants failed to redeem on the passing of the law days that were scheduled to commence on February 20, 2018. This court denied the motion to dismiss the appeal without prejudice and permitted the parties to brief the merits of the mootness issue in their appellate briefs. In their brief, the defendants argue that the appeal is not moot because title never vested in the plaintiff and that, even

if it did, dismissing the appeal as moot would deprive them of their due process right to appeal the orders confirming that title vested in the plaintiff. According to the defendants, "[s]ince a party cannot be deprived of the right to appeal a judgment setting law days, it follows that a party cannot be deprived of the right to appeal an order confirming that those law days have already passed." The plaintiff claims that the trial court lacked jurisdiction to consider the motions to reargue after title vested absolutely in the plaintiff.

Before turning to the merits of the appeal, we must first address the mootness issue. "Our standard of review regarding mootness is well settled. Mootness is a threshold issue that implicates subject matter jurisdiction, which imposes a duty on the court to dismiss a case if the court can no longer grant practical relief to the parties. . . . Mootness presents a circumstance wherein the issue before the court has been resolved or had lost its significance because of a change in the condition of affairs between the parties. . . . [T]he existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . In determining mootness, the dispositive question is whether a successful appeal would benefit the plaintiff or defendant in any way." (Citations omitted; internal quotation marks omitted.) *New Image Contractors, LLC* v. *Village at Mariner's Point Ltd. Partnership*, 86 Conn. App. 692, 698, 862 A.2d 832 (2004). "Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable. Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant." (Internal quotation marks omitted.) *Friedman* v. *Gomez*, 172 Conn. App. 254, 259, 159 A.3d 703 (2017). Our review of the question of mootness is plenary. See, e.g., *State* v. *Rodriguez*, 320 Conn. 694, 699, 132 A.3d 731 (2016).

A review of the basic legal principles governing mortgages and foreclosures will aid in our discussion of this issue. "In Connecticut, a mortgagee has legal title to the mortgaged property and the mortgagor has equitable title, also called the equity of redemption. . . . The equity of redemption gives the mortgagor the right to redeem the legal title previously conveyed by performing whatever conditions are specified in the mortgage, the most important of which is usually the payment of money. . . . Under our law, an action for strict foreclosure is brought by a mortgagee who, holding

legal title, seeks not to enforce a forfeiture but rather to foreclose an equity of redemption unless the mortgagor satisfies the debt on or before his law day. . . . Accordingly, [if] a foreclosure decree has become absolute by the passing of the law days, the outstanding rights of redemption have been cut off and the title has become unconditional in the plaintiff, with a consequent and accompanying right to possession. The qualified title which the plaintiff had previously held under his mortgage had become an absolute one. . . . In other words, if the defendant's equity of redemption was extinguished by the passing of the law days, we can afford no practical relief by reviewing the rulings of the trial court now challenged on appeal, as doing so would have no practical effect or alter the substantive rights of the parties." (Citations omitted; internal quotation marks omitted.) *Sovereign Bank* v. *Licata*, 178 Conn. App. 82, 97, 172 A.3d 1263 (2017). "The question this court must address, therefore, is whether the law days have run so as to extinguish the defendant's equity of redemption and vest title absolutely in the plaintiff. If this has occurred, no practical relief [could] follow from a determination of the merits of this case . . . ." (Internal quotation marks omitted.) *Barclays Bank of New York* v. *Ivler*, 20 Conn. App. 163, 167, 565 A.2d 252, cert. denied, 213 Conn. 809, 568 A.2d 792 (1989).

Generally, pursuant to § 362 (a) of title 11 of the United States Code, "the filing of [a] bankruptcy petition operate[s] as an automatic stay of the plaintiff's foreclosure action."[8] *U.S. Bank National Assn.* v. *Works*, 160 Conn. App. 49, 52, 124 A.3d 935, cert. denied, 320 Conn. 904, 127 A.3d 188 (2015); see also *Bank of New York* v. *Savvidis*, 174 Conn. App. 843, 846, 165 A.3d 1266 (2017). In *Provident Bank* v. *Lewitt*, 84 Conn. App. 204, 208, 852 A.2d 852, cert. denied, 271 Conn. 924, 859 A.2d 580 (2004), however, this court held that the filing of the defendant's bankruptcy petition did not invoke the automatic stay provision of 11 U.S.C. § 362 (a) (2012) but, rather, extended the time for her to redeem only by sixty days from the day the defendant filed her petition, pursuant to 11 U.S.C. § 108 (b) (2012). A discussion of this court's holding in *Provident Bank* is necessary to our analysis of this issue.

In *Provident Bank*, the plaintiff bank brought a foreclosure action that resulted in a judgment of strict foreclosure. Id., 206. After that judgment was opened several times and the law day was set for January 13, 2003, the defendant filed a chapter 7 bankruptcy petition on January 9, 2003. Id. "Although not required to do so by any rule, the plaintiff filed a notice of the extension of the law day until March 10, 2003, with the clerk of the Superior Court in response to the defendant's filing of her bankruptcy petition." Id. When the defendant failed to redeem by that extended law day, title vested in the plaintiff. Id. The defendant appealed to this court, claiming that "the filing of her chapter 7 bankruptcy

prior to her law day indefinitely stayed her redemption period by invoking the automatic stay provision of 11 U.S.C. § 362 (a)." Id. This court disagreed, stating: "We recognize that Connecticut courts consistently have held that the indefinite automatic stay provisions of § 362 (a) apply in strict foreclosure cases where a chapter 7 bankruptcy petition was filed after the judgment but prior to the passing of the final law day. See, e.g., *Citicorp Mortgage, Inc.* v. *Mehta*, 39 Conn. App. 822, 824, 668 A.2d 729 (1995). We conclude that we no longer can follow such authority in light of the holding of the United States Court of Appeals for the Second Circuit in *In re Canney*, 284 F.3d 362 (2d Cir. 2002). In general, we look to the federal courts for guidance in resolving issues of federal law. . . . [T]he decisions of the federal circuit in which a state court is located are entitled to great weight in the interpretation of a federal statute. . . . *Krondes* v. *O'Boy*, 69 Conn. App. 802, 808, 796 A.2d 625 (2002).[9]

"*In re Canney* involved a mortgage foreclosure brought in Vermont under the Vermont statutes. See 12 Vt. Stat. Ann., c. 163, subchapter 6. In *In re Canney*, the Second Circuit determined that the sixty day stay period set forth in § 108 (b) [of title 11 of the United States Code] applied to the passing of the law day rather than the indefinite stay period prescribed in § 362 (a) [of title 11 of the United States Code] when a petitioner filed a bankruptcy petition after judgment had entered but prior to the passing of the law day in a strict foreclosure action. *In re Canney*, supra, 284 F.3d 370–73. Agreeing with the United States Courts of Appeal in the Sixth, Seventh and Eighth Circuits, the court held that § 108 (b), which provides for only a sixty day delay in the running of the law day, is the applicable provision because the automatic stay provision of § 362 (a) prevents only certain affirmative acts taken by a creditor, and the running of time is not one of those acts. . . .

"Although *In re Canney* concerned strict foreclosure under Vermont's statutes, our statutory procedures are similar. Strict foreclosure is the normal method of foreclosure only in Connecticut and Vermont. . . . When a strict foreclosure rather than a sale is ordered, it entails a foreclosure judgment in favor of the mortgagee that results from a proceeding against the debtor and leaves the mortgagor with a right to redeem within a specified time frame, ending with the law day. . . . Because Connecticut and Vermont both allow redemption during a specified time period after which title automatically passes to the mortgagee, the reasoning in *In re Canney*, arising out of the Vermont foreclosure, applies to this Connecticut foreclosure with equal force.

"We conclude that the defendant's period of equitable redemption was not stayed when she filed a chapter 7 bankruptcy petition, although it was extended by sixty days after the filing of the petition. The defendant's

bankruptcy petition was filed on January 9, 2003. The practical effect of § 108 (b) is that the time in which a trustee (or if the bankruptcy petition is dismissed, the mortgagor) may cure a default or perform any other similar act expires at the end of the period settled for redemption or sixty days after the order for relief. The commencement of a voluntary bankruptcy case through the filing of a petition constitutes an order for relief. 11 U.S.C. § 301. In this case, the equity of redemption was foreclosed on March 10, 2003, when the sixty day extended period lapsed without redemption by the defendant. Title became absolute in the plaintiff on March 13, 2003, the date the certificate of foreclosure was recorded on the land records. Thus, because the defendant failed to redeem during this period, she no longer had any right or interest in the property and title passed to the plaintiff." (Citations omitted; footnote added and footnotes omitted; internal quotation marks omitted.) *Provident Bank* v. *Lewitt*, supra, 84 Conn. App. 207–209.

Recently, this court addressed a similar issue in *Seminole Realty, LLC* v. *Sekretaev*, 192 Conn. App. 405, 415, 218 A.3d 198, cert. denied, 334 Conn. 905, 220 A.3d 35 (2019),[10] and rejected a claim that, due to a bankruptcy filing, § 49-15 (b) operated to automatically open and indefinitely extend the law days. This court, relying on *Provident Bank* v. *Lewitt*, supra, 84 Conn. App. 204, concluded that 11 U.S.C. § 108 (b) (2012) operated to extend the time for redemption by only sixty days and that, because the defendant had failed to redeem by the end of the sixty day extension period, absolute title had vested in the plaintiff. *Seminole Realty, LLC* v. *Sekretaev*, supra, 415, 418–20. Therefore, the defendant's claims on appeal that were predicated on the validity of the underlying mortgage were moot given that title to the property had vested in the plaintiff. Id., 407 n.2.

In the present case, after the judgment was opened several times due to numerous bankruptcy filings by various defendants in this case, a new foreclosure judgment was rendered on January 22, 2018, and the law days were reset to commence on February 20, 2018. On February 16, 2018, Wellsville filed its third bankruptcy petition. Pursuant to *Provident Bank* and *Seminole Realty, LLC*, we conclude that the period of equitable redemption was not stayed when Wellsville filed its third bankruptcy petition, although it was extended by sixty days after the filing of the petition. Accordingly, the law days commenced on April 17, 2018. The defendants do not dispute that they did nothing during the sixty day extension to exercise their right of redemption. Because the defendants failed to redeem before the passing of the law days, they no longer had any interest in the property and title passed to the plaintiff. Thus, there was no practical relief that the trial court could have afforded the defendants with respect to their

motions to reargue.

This court has explained that "it is not within the power of appellate courts to resuscitate the mortgagor's right of redemption or otherwise to disturb the absolute title of the redeeming encumbrancer. . . . Simply put, once title has vested absolutely in the mortgagee, the mortgagor's interest in the property is extinguished and cannot be revived by a reviewing court." (Internal quotation marks omitted.) *Citigroup Global Markets Realty Corp.* v. *Christiansen*, 163 Conn. App. 635, 641, 137 A.3d 76 (2016). "[I]f the defendant's equity of redemption was extinguished by the passing of the law days, we can afford no practical relief by reviewing the rulings of the trial court now challenged on appeal, as doing so would have no practical effect or alter the substantive rights of the parties." *Sovereign Bank* v. *Licata*, supra, 178 Conn. App. 97. "[T]he effect of strict foreclosure is to vest title to the real property absolutely in the mortgagee and to do so without any sale of the property. A judgment of strict foreclosure, when it becomes absolute and all rights of redemption are cut off, constitutes an appropriation of the mortgaged property to satisfy the mortgage debt. . . . In *Barclays Bank of New York* v. *Ivler*, supra, 20 Conn. App. 163, the defendant mortgagor appealed from the denial of his motion to open a stipulated judgment of strict foreclosure. . . . In that case, this court stated: The question this court must address . . . is whether the law days have run so as to extinguish the defendant's equity of redemption and vest title absolutely in the plaintiff. If this has occurred, no practical relief [could] follow from a determination of the merits of this case . . . ." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Ocwen Federal Bank, FSB* v. *Charles*, 95 Conn. App. 315, 323–24, 898 A.2d 197, cert. denied, 279 Conn. 909, 902 A.2d 1069 (2006); see id., 324 ("because the law days had run and title had vested absolutely in the plaintiff, the defendant's appeal was moot"). In the present case, because title to the property absolutely had vested in the plaintiff after the passing of the law days, the motions to reargue were moot when they were filed approximately eight months after the vesting of title, as there was no practical relief that the court could have afforded the defendants via their motions to reargue at that time. See *Deutsche Bank National Trust Co.* v. *Fritzell*, 185 Conn. App. 777, 786, 198 A.3d 642 (2018), cert. denied, 330 Conn. 963, 199 A.3d 1080 (2019). The court, therefore, should have dismissed as moot, rather than denied, the motions to reargue. See id.; see also *Argent Mortgage Co., LLC* v. *Huertas*, 288 Conn. 568, 569–70, 953 A.2d 868 (2008) (after title had vested absolutely in plaintiff, court should have dismissed, rather than denied, late motion to open); *Thompson Gardens West Condominium Assn., Inc.* v. *Masto*, 140 Conn. App. 271, 274, 59 A.3d 276 (2013) (although court properly determined that it lacked jurisdiction to grant

motion to open judgment of strict foreclosure filed nearly six months after title had vested in plaintiff, court should have dismissed motion to open instead of denying motion).

The defendants attempt to distinguish *Seminole Realty, LLC*. At oral argument before this court,[11] they claimed that, in *Seminole Realty, LLC*, the trial court was correct that the law day had passed, although it was wrong as to the day on which it passed, as the court did not account for the sixty day extension in 11 U.S.C. § 108 (b) (2012). Whereas, in the present case, they claimed that the court was wrong that the law day had passed and that its decisions of March 12, 2018, granting the plaintiff's motions for orders deprived the defendants of the right to move to open the judgment and extend the law days.[12] They also claimed at oral argument that because there were errors of law in the court's decisions, the court, in ruling on their motions to reargue, should have revisited those prior rulings. In their brief, they claim further that "[t]his court can correct the rulings on the motions for order because it is necessary to effect justice." Specifically, they allege that "the orders granting the motions for order were contrary to law at the time they were rendered and still are. If upheld despite the judicial error, it would deprive Wellsville and . . . Pastor of their equity of redemption. The circumstances suggest that this court should go beyond reversing the rulings on the reargument motions and reverse the rulings on the motions for order." We are not persuaded by the defendants' claims.

If the defendants believed that the court's March 12, 2018 decisions were incorrect, they could have timely filed their motions to reargue within twenty days of those decisions as required by Practice Book § 11-12.[13] They have not demonstrated how or why they were prevented from doing so, especially given that they did, eventually, file such motions approximately nine months later. Instead, they claim, without authority, that they were prejudiced by the court's rulings and that, with respect to their motions to reargue, it's a matter of "correcting an error of law." We disagree. Although a trial court has discretion to grant an untimely motion to reargue; see *Torres* v. *Carrese*, 149 Conn. App. 596, 616, 90 A.3d 256, cert. denied, 312 Conn. 912, 93 A.3d 595 (2014); if a defendant could file a motion to reargue at *any* time after a judgment is rendered to correct a claimed error of law, there would be no finality of judgments. "Generally, courts recognize a compelling interest in the finality of judgments which should not lightly be disregarded. Finality of litigation is essential so that parties may rely on judgments in ordering their private affairs and so that the moral force of court judgments will not be undermined. The law favors finality of judgments . . . . 46 Am. Jur. 2d 543–44, Judgments § 164 (2017). This court has emphasized that due consideration of the finality of judgments is

important and that judgments should only be set aside or opened for a strong and compelling reason. See *Lewis* v. *Bowden*, 166 Conn. App. 400, 403, 141 A.3d 998 (2016); see also *Brody* v. *Brody*, 153 Conn. App. 625, 631–32, 103 A.3d 981, cert. denied, 315 Conn. 910, 105 A.3d 901 (2014), and cases cited therein. It is in the interest of the public as well as that of the parties [that] there must be fixed a time after the expiration of which the controversy is to be regarded as settled and the parties freed of obligation to act further in the matter by virtue of having been summoned into or having appeared in the case. . . . Without such a rule, no judgment could be relied on. . . . *Bruno* v. *Bruno*, 146 Conn. App. 214, 229, 76 A.3d 725 (2013). [T]he modern law of civil procedure suggests that even litigation about subject matter jurisdiction should take into account the importance of the principle of the finality of judgments . . . ." (Internal quotation marks omitted.) *Ruiz* v. *Victory Properties, LLC*, 180 Conn. App. 818, 828, 184 A.3d 1254 (2018); see also *Federal National Mortgage Assn.* v. *Farina*, 182 Conn. App. 844, 853–54, 191 A.3d 206 (2018). If this court were to accept the defendants' proposition, it would "invite uncertainty in our system of property conveyance." *Citibank, N.A.* v. *Lindland*, 131 Conn. App. 653, 665, 27 A.3d 423 (2011), rev'd in part on other grounds, 310 Conn. 147, 75 A.3d 651 (2013).

Finally, the defendants, in arguing that the appeal is not moot, claim that "a foreclosure defendant cannot be deprived of the right to appeal concerning the law days" and that they would be deprived of due process if the appeal were found to be moot. In support of this claim, they rely on *Continental Capital Corp.* v. *Lazarte*, 57 Conn. App. 271, 274, 749 A.2d 646 (2000), for the proposition that "[a] party may not effectively be deprived of the right to appeal within the twenty days by having the law day pass within that time, thereby causing a loss of the right of redemption." The defendants, however, were never deprived of this right, as the twenty day period to appeal from the court's March 12, 2018 decisions expired before the law days commenced on April 17, 2018. This court's decision in *Sovereign Bank* v. *Licata*, supra, 178 Conn. App. 82, is instructive here. In *Sovereign Bank*, this court held: "Because no appeal was filed from the judgment of strict foreclosure in this case, any initial appellate stay of execution that arose when the judgment was rendered expired after the appeal period for that judgment had run, which was long before the law days set by the court passed. . . . Accordingly, because there was no appellate stay in effect when the law days began to run . . . absolute title to the property transferred to the plaintiff as a matter of law after all law days expired.

"It is true that the record reflects some later confusion by the parties, the trial court and this court regarding whether the foreclosure judgment had been subject to an appellate stay and whether the law days needed

to be reset. Any such misstatements or errors, however, did nothing to alter the legal reality—*law days passed and title to the property became absolute in the plaintiff. . . .* Accordingly, if there was any ambiguity in the record regarding the status of this foreclosure action, it has existed with the knowledge and acquiescence of the defendant. It was not until the plaintiff sought to sell the property during the pendency of its bankruptcy action that the defendant claimed any need for clarification." (Emphasis added.) Id., 100–101. Likewise, in the present case, it was not until the intervening defendants sought to gain possession of the property through an execution of ejectment that the defendants filed their motions to reargue seeking to correct alleged errors of law by the court that occurred approximately nine months prior. Because the motions to reargue were filed approximately eight months after title in the property vested in the plaintiff, the claims raised therein were moot and the court, therefore, should have dismissed the motions.[14]

The form of the judgment is improper, the judgment denying the defendants' motions to reargue is reversed and the case is remanded with direction to render judgment dismissing the motions as moot.

In this opinion the other judges concurred.

[1] The other defendants in this action are Melissa L. Mamudi, Bridgewater Partners, LLC, Laurie J. Pastor, Mendim Mamudi and SROTSAPNEVES-NLS, Inc. Because those parties are not involved in this appeal, we refer in this opinion to Pastor and Wellsville collectively as the defendants and individually by name where necessary.

[2] In the summons, the plaintiff was named as "U.S. Bank, National Association, as Trustee." In a motion to substitute the plaintiff in this action, which the plaintiff filed on August 23, 2013, and was granted by the court on September, 10, 2013, the plaintiff alleged that due to a scrivener's error, it was not properly named in the action, and that its proper name was "U.S. Bank, National Association, as Trustee, Successor in Interest to Bank of America, National Association, as Trustee, Successor by Merger to LaSalle Bank, National Association, as Trustee for Residential Asset Securities Corporation, Home Equity Mortgage." Thereafter, the plaintiff filed another "Motion to Substitute Plaintiff," alleging that due to a scrivener's error, it was not properly named, and that its correct name is U.S. Bank, National Association, as Trustee for RASC 2005-AHL1. On February 9, 2015, the court, *Russo, J.*, granted the plaintiff's motion to substitute. Our references in this opinion to the plaintiff are to U.S. Bank, National Association, as Trustee for RASC 2005-AHL1.

[3] Section 362 (c) of title 11 of the United States Code provides in relevant part: "Except as provided in subsections (d), (e), (f), and (h) of this section . . . (4) (A) (i) if a single or joint case is filed by or against a debtor who is an individual under this title, and if 2 or more single or joint cases of the debtor were pending within the previous year but were dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707 (b), the stay under subsection (a) shall not go into effect upon the filing of the later case . . . ."

[4] Section 108 (b) of title 11 of the United States Code provides in relevant part: "[I]f . . . an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1201 or 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or (2) 60 days after the order for relief."

[5] Section 362 (a) of title 11 of the United States Code provides in relevant part: "Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5 (a) (3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title . . . ."

[6] The writ of error was rejected pursuant to Practice Book § 72-3 (c) (3) and (d) for the defendants' failure to include the signed writ of error and the signed marshal's return.

[7] The property was purchased by Armando Bernardo and Maria Bernardo on September 12, 2018.

[8] The defendants also claim that the filing of the bankruptcy petition by Wellsville triggered an automatic stay pursuant to § 49-15 (b). We reject this claim. Pursuant to § 49-15 (b), "[u]pon the filing of a bankruptcy petition by a mortgagor under Title 11 of the United States Code, any judgment against the mortgagor foreclosing the title to real estate by strict foreclosure shall be opened automatically without action by any party or the court . . . ." The statute does not define the term "mortgagor." Where a statute does not define a term, "[w]e may presume . . . that the legislature intended [a word] to have its ordinary meaning in the English language, as gleaned from the context of its use. . . . Under such circumstances, it is appropriate to look to the common understanding of the term as expressed in a dictionary." (Internal quotation marks omitted.) *Meriden* v. *Freedom of Information Commission*, 191 Conn. App. 648, 657, 216 A.3d 847, cert. granted on other grounds, 333 Conn. 926, 217 A.3d 994 (2019). Black's Law Dictionary defines mortgagor as "[o]ne who, having all or some part of title to property, by written instrument pledges that property for some particular purpose such as security for a debt. The party who mortgages the property; the debtor. That party to a mortgage who gives legal title or a lien to the mortgagee to secure the mortgage loan." Black's Law Dictionary (6th Ed. 1990) p. 1012. The defendants clearly do not meet that definition. The mortgagor in the present case was Mamudi. Accordingly, § 49-15 (b) is not applicable to this case.

[9] See also *Thomas* v. *West Haven*, 249 Conn. 385, 392, 734 A.2d 535 (1999), cert. denied, 528 U.S. 1187, 120 S. Ct. 1239, 146 L. Ed. 2d 99 (2000); *Knutson Mortgage Corp.* v. *Salata*, 55 Conn. App. 784, 787, 740 A.2d 918 (1999).

[10] On September 10, 2019, after the briefs in this case were filed, this court released its decision in *Seminole Realty, LLC* v. *Sekretaev*, supra, 192 Conn. App. 405. The parties, thus, did not address *Seminole Realty, LLC*, in their briefs but were notified to be prepared to address the impact, if any, of that decision at oral argument.

[11] See footnote 10 of this opinion.

[12] We note that, in light of the sixty day extension of 11 U.S.C. § 108 (b) (2012), there was no need for the law days to be reset. See *Seminole Realty, LLC* v. *Sekretaev*, supra, 192 Conn. App. 418–20; *Provident Bank* v. *Lewitt*, supra, 84 Conn. App. 207–209. Therefore, the defendants' claim that the court's rulings prejudiced them by depriving them of the right to be able to file a motion to reset the law days fails.

[13] "[T]he purpose of reargument is . . . to demonstrate to the court that there is some decision or some principle of law which would have a controlling effect, and which has been overlooked, or that there has been a misapprehension of facts. . . . It also may be used to address alleged inconsistencies in the trial court's memorandum of decision as well as claims of law that the [movant] claimed were not addressed by the court. . . . [A] motion to reargue [however] is not to be used as an opportunity to have a second bite of the apple or to present additional cases or briefs which could have been presented at the time of the original argument." (Citations omitted; internal quotation marks omitted.) *Opoku* v. *Grant*, 63 Conn. App. 686, 692–93, 778 A.2d 981 (2001).

[14] In light of this conclusion, we need not reach the merits of the claims raised on appeal.